MARGARET GOTTSCHALK, PLAINTIFF IN ERROR, v. THE C., B. & Q. R. R., DEFENDANT IN ERROR.

**Eminent Domain:** DAMAGES. Where a lot abuts upon an alley upon which a railroad is built with the consent of the city authorities, if the owner of the lot is thereby deprived of a public right which he has enjoyed in connection with his premises, and in consequence thereof he sustains damages in excess of that shared by the public generally, he may recover for such excess.

ERROR to the district court of Platte county. Heard below before GEORGE W. POST, J.

*W. S. Geer*, for plaintiff in error, cited: *Southern P. R. R. v. Reed*, 41 Cal., 256. *Lockland v. R. R. Co.*, 3 Mo., 180. *Brady v. DesMoines & Fort Dodge R. R.*, 10 N. W. R., 754. *G. R. & I. R. R. Co. v. Heizel*, 38 Mich., 71. Dillon on Mun. Corp., 3d Ed., § 274.

*A. M. Post* (with *Marquett & Deweese*), for defendant in error, cited: Dillon on Mun. Corp., 576. *Milburn v. Cedar Rapids*, 12 Iowa, 246. *Barney v. Keokuk*, 94 U. S., 340. *Ind. R. R. Co. v. Hartley*, 67 Ill., 439. *A. & N. R. R. v. Gaviede*, 10 Kan., 552. *Mercer v. R. R. Co.*, 35 Penn. State, 99. *Brooklyn v. Railroad*, 47 New York, 475.

MAXWELL, J.

The plaintiff is the owner of certain lots in block 83 in the city of Columbus, which abut upon the alley running through said block. The defendant, in pursuance of authority from the mayor and council, located and constructed a railroad in said alley, by reason of which the plaintiff claims that the lot in question is damaged or diminished in value in the sum of $475, and this action was brought to recover the same. The cause was referred by consent to a referee, who found as follows:

*First.* That the plaintiff is the owner of fractional lots 7 and 8, in block 83, in the city of Columbus, Platte county, Nebraska; that she acquired title on the first day of June, 1861, and has ever since been in possession by herself or tenant.

*Second.* That said fractional lots abut upon the alley and street in question in this action.

*Third.* That the city of Columbus, Platte county, Nebraska, is a city of the second class.

*Fourth.* That in January, 1857, the plat of the village of Columbus was duly laid off, acknowledged by the proprietor, filed, and recorded in the office of the county clerk of said Platte county, Nebraska, which plat included the parcels of ground in question, said plat showing the various streets and alleys therein, including the street and alley described in plaintiff's petition.

*Fifth.* That said city of Columbus is the successor of the village of Columbus.

*Sixth.* That the Lincoln & Northwestern Railroad Company, an incorporation duly organized under the laws of the state of Nebraska, constructed a line of railroad into said city of Columbus.

*Seventh.* That the city of Columbus, by an ordinance duly adopted, authorized said incorporation to construct its side track across said street and along said alley in question in front and alongside of the property of plaintiff.

*Eighth.* That said ordinance contained a provision as follows: "The Lincoln & Northwestern Railroad Company shall be liable to pay all damages to private property which may be sustained by reason of this ordinance."

*Ninth.* That in pursuance of said ordinance, said Lincoln & Northwestern Railroad Company did construct its side track across said street and along said alley in question, and in front and alongside of the said property of plaintiff, and that it has been built and maintained since August 1st, 1880.

*Tenth.* That the Lincoln & Northwestern Railroad Company has leased said railroad, including said side track, for 999 years to the Burlington & Missouri River Railroad in Nebraska, an incorporation duly incorporated under the laws of the state of Nebraska, and said Burlington & Missouri River Railroad Company in Nebraska has consolidated with the defendant, a foreign corporation.

*Eleventh.* That the defendant is and was at the trial

and of the bringing of this action maintaining and operating said railroad and side track.

*Twelfth.* That plaintiff offered evidence to prove that she had sustained damages in the manner and in the amount as stated in her petition.

*Thirteenth.* Defendant admits that it is liable in this action to the same extent as the Lincoln & Northwestern Railroad Company would be liable had not said lease been made.

### CONCLUSIONS OF LAW.

*First.* That the title to the fee of said street and alley in question is in the said city of Columbus.

*Second.* That the said city of Columbus had the authority to authorize said railroad company to build and maintain its said track across said street and along said alley.

*Third.* That the provisions of said ordinance, so far as the same relate to the street and alley in question, do not vacate said street and alley.

*Fourth.* That the provisions of said ordinance do not enlarge the common law rights of plaintiff to damages or compensation.

*Fifth.* That plaintiff is not entitled to recover compensation for the damages stated in the petition.

*Sixth.* That judgment in this action should be rendered in favor of defendant for costs.

The report was confirmed by the district court and the cause dismissed.

The petition sets forth certain damages which the plaintiff claims to have sustained by reason of the construction and operation of the road.

The defendant contends that as it had lawful authority from the city council to construct its road in the alley in question, therefore it is not liable, and as there is no direct physical injury to the plaintiff's property shown, she cannot recover.

The title to streets and alleys in this state vests in the public.  Sec. 83 of the corporation law, provides that, "if it shall be necessary in the location of any part of any railroad to occupy any road, street, alley, or public way or ground of any kind, or any part thereof, it shall be compe- tent for municipal or other corporation or public officer or public authorities, owning or having charge thereof, and the railroad company to agree upon the manner and upon the terms and conditions upon which the same may be used or occupied, and if said parties shall be unable to agree thereon, and it shall be necessary in the judgment of the directors of such railroad company to use or occupy such road, street, alley, or other public way or ground, such company may appropriate so much of the same as may be necessary for the purpose of such road, in the same manner and upon the same terms as is provided for the appropria- tion of the property of individuals by the eighty-first sec- tion of this chapter."    Comp. Stat., 146.

Sec. 21, Art. I. of the constitution of 1875, provides that, "the property of no person shall be taken or *damaged* for public use without just compensation therefor."

The constitution of Illinois contains a similar provision, and its proper construction was before the supreme court of that state in *Rigney v. City of Chicago*, 102 Ill., 64.

In that case it appears that Rigney was the owner of a lot twenty-five feet in width and 100 feet in depth, front- ing on Kinzie street, in the city of Chicago.   On the front part of this lot there was a two-story frame dwelling.   In 1874 the city constructed a viaduct along Halstead street and across Kinzie at their intersection, about 220 feet west of the plaintiff's premises.  In consequence of the construc- tion of the viaduct all communication with Halstead street was cut off except by means of stairs, and the rental value of the plaintiff's property was reduced from $60 per month to $23, and the property itself from $5,000 at the time of the erection of the obstruction to one-third of that amount,

after the construction. The court below directed a verdict for the city. There was no claim that Rigney's possession had been disturbed or that any direct physical injury had been done to his premises by reason of the obstruction complained of. The grounds upon which recovery was sought were, that the city by obstructing the plaintiff's communication with Halstead street by way of Kinzie street had deprived him of a public right which he enjoyed in connection with his property, and thereby inflicted upon him an injury in excess of that shared by him with the public at large, the action being brought to recover the excess. The action in this case is brought for the same cause. The case cited, therefore, is directly in point. The opinion contains an elaborate review of the authorities and particularly of the Illinois cases. It is there said:

"Under the constitution of 1848 it was essential to a right of recovery, as we have already seen, that there should be a direct physical injury to the *corpus* or subject of the property, such as overflowing it, casting sparks or cinders upon it, and the like; but under the present constitution it is sufficient if there is a direct physical obstruction or injury to the right of user or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which by the common law would, in the absence of any constitutional or statutory provisions, give a right of action.

"As opposed to this view, appellee cites: *Chicago, Burlington & Quincy R. R. Co. v. McGinnis,* 79 Ill., 269. The facts of this case arose before the new constitution, and consequently its construction was not involved in it; besides there is nothing said in it that militates against the view here expressed, but on the contrary, so far as that case has any application to the one before us, sustains it.

"The case of *Stetson v. The Chicago & Evanston R. R. Co.,* 75 Ill., 74, is relied on for the same purpose. The question presented by that case was, whether, where a rail-

road company under authority from a city has located its track upon a public street, a bill in equity will lie at the suit of any owner of lots abutting on the street to restrain the company from operating its road until the damages claimed to have been done to the lots by reason of the construction and operation of the railway are ascertained and paid; and it was held that such a bill would not lie, but that the party would be left to his action at law for whatever actual damages he may have sustained, the court having held that where there has been no actual taking of property and the company has constructed its track under authority from the city, chancery has no jurisdiction. What was said with respect to the character of the injury was not at all necessary to a decision of the case, and must be regarded as mere *obiter*.    But even if this were not so, all that is there said may be harmonized in the manner we have stated with the previous and subsequent decisions of this court upon that question.

"In this connection the *Chicago, Milwaukee & St. Paul R. R. Co. et al. v. Hall*, 90 Ill., 42, is also cited. That case went off on a question wholly different from the one under consideration, and much of what we have said with respect to the preceding case is equally applicable to that. It is said in the opinion in that case, in referring to the character of the injury for which a recovery may be had, "the injury must be physical." There is no particular objection to this language if taken in its more appropriate sense as we have already explained. But admitting the language was used in the sense claimed by appellee, it must be regarded as having been inconsiderately said, and not warranted by the previous decisions of that court. It is not reasonable to suppose that it was intended by the language there used to overrule without even a reference to them, the case of *City of Pekin v. Winkel*, 77 Ill., 56. *Same v. Brereton*, 67 Id., 477.    *City of Elgin v. Eaton*, 83 Id., 535.    *City of Shawneetown v. Mason* 82 Id., 337,

and *Stack v. City of East St. Louis*, 85 Id., 377, all of which expressly hold that there may be a recovery for injuries other than those directly affecting the *corpus* or subject of the property, and in three of the cases the only injury complained of was in effect precisely like that complained of in the present case. The conclusion reached in all these cases is distinctly placed upon the ground that the new constitution has enlarged the right of recovery by extending its provisions to a class of cases not provided for under the old constitution, and to now turn round and hold, as we are urged to do, that the old test of direct physical injury to the *corpus* or subject of the property affected must still control as it did under the old constitution, would place this court in anything but an enviable position, and justly invite adverse criticism from an enlightened bar.

"The question then recurs, what additional class of cases did the framers of the new constitution intend to provide for which are not embraced in the old? While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury which is necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of the neighboring property, yet that is clearly a case of *damnum absque injuria*. So as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such

disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.

"The English courts, in construing certain statutes providing compensation for injuries occasioned by public improvements, in which the language is substantially the same as that in our present constitution, after a most thorough consideration of the question, lay down substantially the same rule here announced. *Chamberlain v. West End of London Railway Co.*, 2 Best & Smith, 605. 110 E. C. L. R., 604. Id., 617. *Beckett v. Midland Railway Co.*, L. R. 1 C. P., 241, on appeal, 3 C. P., 82. *McCarthy v. Metropolitan Board of Works*, L. R. 7 C. P., 508. These statutes required compensation to be made where property was "injuriously affected," which the English courts construe as synonymous with the word "damaged." *Hall v. Mayor of Bristol*, L. R. 2 C. P., 322. *East and West India Docks Co. v. Gattke*, 3 McN. & G., 155.

"The rule we have adopted was unanimously sustained by the House of Lords in the McCarthy case, *supra*, and is believed to be in consonance with reason, justice, and sound legal principles, and while it has not heretofore been formulated in express terms, as now stated, yet the principles upon which the rule rests are fully recognized in the previous decisions of this court, particularly in *City of Shawneetown v. Mason*, 82 Ill., 337. *City of Pekin v. Brereton*, 67 Id., 477. *Chicago & Pacific R. R. Co. v. Francis*, 70 Id., 238. *City of Pekin v. Winkel*, 77 Id., 56. *City of Elgin v. Eaton*, 83 Id., 535."

In *Beckett v. The Midland Railway Company*, 3 Com-

mon Pleas L. R., 81, the action was brought to recover damages under the lands clauses consolidation act and railways clauses consolidation act, which provide for damages where land is "injuriously affected." In that case the road in front of the plaintiff's house, which had formerly been fifty feet in width, had been narrowed, by means of an embankment made by the defendants upon a portion of it, to thirty-three feet. There was testimony tending to show that the light in the lower portion of the house had been sensibly diminished, and that the narrowing of the road was a great discomfort, and occasioned inconvenience by reason of carriages being compelled to go to some distance beyond the gate before they could turn. The case was tried below before Cockburn, Ch. J., who left it to the jury to say whether there had been any diminution of light or of air by reason of the embankment, or any diminution in value of the plaintiff's house by reason of the contracting of the road in front of it. The jury found in the affirmative on both questions and returned a verdict in favor of the plaintiff for £802, upon which judgment was rendered. The judgment was affirmed in the appellate court.

In the case of *Mollandin v. Union Pacific Ry. Co.,* 14 Federal Reporter, 394, the United States Circuit Court for Colorado gave a construction to a clause in the constitution of that state similar to our own, and the case of *Rigney v. Chicago* was cited and approved.

Sec. 13 Art. I. of the constitution of this state, of 1866, provided that, "The property of no person shall be taken for public use without just compensation therefor." In our present constitution this section was amended by adding the words "or damaged." Under our former constitution if any portion of the real estate injured was appropriated, the law allowed full compensation for the injury, but if no part thereof was taken no damages could be recovered, however great the injury to the property. This being the state of the law at that time, what was the object of the amend-

ment spoken of? In the case cited from Illinois it was held that the words "or damaged" were equivalent to the words "injuriously affected" in the English statute, and we think that construction is correct. The constitutional provision therefore is, that private property shall not be taken or injuriously affected without just compensation therefor. The evident object of the amendment was to afford relief in certain cases where, under our former constitution, none could be given. It was to grant relief in cases where there was no direct injury to the real estate itself, but some physical disturbance of a right which the owner possesses in connection with his estate, by reason of which he sustains special injury in respect to such property in excess of that sustained by the public at large. To this extent the property owner is entitled to recover. It is not necessary to entitle a party to recover, that there should be a direct physical injury to his property if he has sustained damages in respect to the property itself whereby its value has been permanently impaired and diminished. This is but justice. While public improvements are essential to progress and to the welfare of the race, yet as the public are to receive the benefits, whether by the opening of streets and public grounds or by the construction of railways, the party receiving the benefit should bear the burden. This should not be cast upon others. The question of the amount of damages is one of fact for the jury, and cannot be determined in the first instance by the court, and does not arise in this case. As, in our opinion, the petition states facts sufficient to show that the plaintiff in respect to the real estate in question has sustained damages in excess of that shared by her with the public generally, therefore to the extent of such damages she is entitled to recover. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

COBB, J., concurred.

LAKE, CH. J., dissenting.

For several reasons which I will briefly give, it is impossible for me to unite in the opinion announced in this case by the majority of the court.

My first objection to the opinion is, that it completely ignores one of the principal questions presented by the record for our decision, viz., that as to the proper rule of damages between an abutting lot owner and a railroad company for laying and operating a railroad within a street of a city. It leaves one-half of the case really undecided.

The matter of complaint is stated in the petition in two counts or causes of action: one for obstructing a street, and the other for obstructing an alley upon which the lots in question abut, by the defendant's railroad. No allusion is made in the opinion to the incumbrance of the street, and whether the rule applied to that of the alley is to govern is left entirely to conjecture. As this question will necessarily again arise on a new trial, the court below ought, I think, to have been advised as to whether its former ruling in that particular is also open to objection. This silence respecting it, whether so intended, or otherwise, is well calculated to leave the impression that it is not. For myself, however, I desire to say that where, as is the case in this state, the fee of alleys as well as of streets in a city is in the corporation for the use of the public, I am aware of no case in which any distinction in this respect has been recognized. The same principle I think should govern as to both.

The chief fault, however, that I find with the opinion of my brethren is, that while it lays down a rule which may perhaps find reasonable support in the authorities they cite, the case as made by the record is not within it. Indeed, I take upon me to say that they cite no case of which it can fairly be said that upon the facts of this one, the court deciding it would have sustained a recovery of damages.

38

The *gravamen* of the complaint here is, that the defendant's railroad track, on which it is running its cars, is laid across a street and along an alley of the city adjoining the plaintiff's lots, which are thereby damaged. Admitting all this to be true, I think it is clear by the light of authorities that the plaintiff's case is fairly within the rule of *damnum absque injuria.*

It seems to be conceded by my associates, and doubtless it is true, that but for the provision of our constitution which secures to owners of property simply "damaged" —not taken—for public use, just compensation, the road having been constructed under legislative authority, there would be no right of action for the act complained of. Where there is no permanent taking away of any portion of the street, but only the mere obstruction of passing trains to the temporary inconvenience of those wishing to use it, this is not such an element of damage to an adjoining estate as will authorize a recovery. *Caledonian Railway Co. v. Ogilvy*, 2 Macq. H. L. Cas., 229.

My associates concede also that the right to compensation given by our constitution is not at all unlike that secured by the sixty-eighth section of the lands clauses consolidation act and the sixth section of the railway clauses consolidation act of the English parliament, where lands are injuriously affected by a railroad. Therefore the adjudged applications of those sections by the higher English courts ought, I think, to have great weight with us in determining the full scope and effect to be given to sec. 21 of our bill of rights.

One prominent feature of the English decisions under those statutes is, that to justify a recovery the damage must be one for which an action would lie if the work causing it were not authorized by parliament. In the case of *Beckett v. Midland Railway Co.*, L. R. 3, C. P. 82, which may be regarded as a leading one on this subject, the principal question was as to whether certain premises fronting

on a street through which the company had built its road were "injuriously affected" within the meaning of the English statute.

Although the facts of that case were held sufficient to make the company liable, it is quite clear to my mind, from what was said by the judges in applying the law to them, that those of the one we are considering are not. In that case, the roadway in front of the plaintiff's premises, which had formerly been fifty feet wide, was reduced by the embankment for the railroad to thirty-three feet, in consequence of which the light in the lower portion of the house had been sensibly diminished, and great discomfort and inconvenience occasioned to the occupants by reason of carriages being compelled to go a considerable distance beyond the gate before they could turn. As to seventeen feet of the roadway, the occupancy by the company in consequence of the elevation of the railroad track, was exclusive. In thus permanently diminishing the light and rendering the approach inconvenient, a special injury was done to the plaintiff's property; and it was upon this ground that the recovery was sustained. Wells, J., in giving his views, said, that to entitle the claimant to compensation "two things must concur, viz., that he has sustained a particular damage from the execution by the company of the works authorized by the special act, and that the damage was one for which he might have maintained an action if the work was not authorized by parliament." And he said also, "that the injury he complains of was an injury to his estate, and not a mere obstruction or inconvenience to him personally, or to his trade, although it might have been the subject of an action if the works which occasioned it had not been executed under the sanction of parliament." And in *Rickett v. Directors, &c., of Metropolitan Railway Co.*, Law Rep., 2 H. L., 175, it was held that no case comes within the purview of those sections of the English statutes, "unless in respect of damage to the land itself, which damage

would have been the subject of an action at law before those statutes." In this case Lord Cranworth, in giving his view of the subject, used this language: "Both principle and authority seem to me to show that no case comes within the purview of the statute, unless where some damage has been occasioned to the land itself, in respect of which, but for the statute, the complaining party might have maintained an action. The injury must be actual injury to the land itself, as by loosening the foundation of buildings upon it, obstructing its light or its drains, making it inaccessible by lowering or raising the ground immediately in front of it, or by some such physical deterioration. Any other construction of the clause would open the door to claims of so wide and indefinite a character as could not have been in the contemplation of the legislature." See also the remarks of the Lord Chancellor Chelmsford, who took substantially the same view. And this being a decision of the House of Lords, the case is certainly entitled to great weight as an authoritative exposition of the law on this subject.

The only other English case I care to refer to in this connection is that of *Chamberlain v. The West End of London, etc., Railway Company*, 2 B. & S., 605 (110 Eng. Com. Law Repts.) This case was under the lands clauses consolidation and railway clauses consolidation acts, and in passing upon it Cockburn, Ch. J., said: "That if an action would have lain for the injury done by the company's works, unless their act had authorized them, then the land is injuriously affected, and compensation may be awarded." The injury here complained of was caused by an embankment made for the railroad in the street immediately in front of the plaintiff's premises to the height of the first floor windows, which effectually prevented access to the houses thereon except by a "deviation road," as it is called, which had to be made, and which was much less convenient than the old one had been before the obstruction.

A case cited by my associates, the one, indeed, on which they seem chiefly to rest for support to their opinion, which is made up chiefly of quotations from it, is *Rigney v. the City of Chicago*, 102 Ill., 64. As an authority, however, that case is much weakened, not only by the fact of it having been decided by a divided court, but also because it is directly opposed to that of the *Chicago, Milwaukee and St. Paul R. R. Co. v. Hall*, 90 Id., 42, wherein a like question, under the same constitutional provision, was decided the other way by a united court. In the last mentioned case, it was claimed that the plaintiff's premises fronting on a street in the city of Chicago were damaged by the laying of a railroad track in the street near his dwelling, and by leaving cars standing on the same, " thereby impeding access to and egress from his property." Also, " by reason of smoke, dust, and cinders being cast from locomotive engines, by passing on the tracks, upon his house and lot." As in the case before us, there was no complaint of either cut or embankment, but the tracks seem to have been on a level with the surface of the street. On this state of facts the court held that " the measure of damages is the loss sustained by the nuisance, the injury from jarring the building, the throwing of cinders, ashes, and smoke upon appellee's premises. The depreciation of the value of the property by these causes may be considered, but not general depreciation in value from other causes—mere inconvenience in approaching or leaving the property, or the noise and confusion in the vicinity. The injury must be physical."

In the case of *Rigney v. The City of Chicago*, the court professed to keep within the line of the English decisions to which I have referred. And it is quite possible that the facts of that case warranted the conclusion that the damages were such as to bring the city fairly within the rule of liability laid down by the English courts. The embankment complained of, although not directly in front

of the plaintiff's premises, was but a short distance away, and was such as to almost entirely prevent approach to them from Halstead street, one of the principal thoroughfares of the city.

But whilst forbearing the expression of an opinion as to whether the damages in that case were within the established English rule, I am very certain that those complained of in the case at bar are not. In this case there is no physical disturbance whatever of the lots, which appear to be practically unimproved. It is not claimed that the railroad is either above or below the surface of the street and alley, and therefore it is probably on a level with them. Neither is it claimed that any difficulty is experienced in crossing and re-crossing the road, or traveling along it, save when occupied by the company's cars. It does not appear that this portion of the road is within the limits of depot grounds, so it can be lawfully occupied by the company to the exclusion of the plaintiff and others who may have occasion to go there, only so long as is reasonable for the passage of moving trains over it. If more time is taken than is reasonable, to the hindrance and injury of another, the proper remedy may be found in an action for damages, not to the lots, but to the individual thus discommoded.

Again, the injury here complained of is not within the English rule of liability for still another reason, which is, that it is not different in kind, although perhaps different in degree, from that experienced by every other person having occasion to pass along the street or alley. "The fact that a claimant sustains damages greater in degree, if not different in kind, will not entitle him to a recovery." Lord Chancellor Chelmsford, in *Ricket v. Directors, etc., of Metropolitan Railway Co., supra.* No portion, either of the street or alley, is permanently taken away. There is "the mere obstruction of passing trains to the temporary inconvenience" of the plaintiff and others wishing to use them,

which "is not such an element of damage to an estate as will authorize a recovery." *Caledonian Railway Company v. Ogilvy, supra.*

And finally, the injury is not within that rule, for the additional reason that, even if the company had not been authorized by the legislature to occupy the street and alley for this new public use, the matter complained of is not such an injury to the plaintiff's lots as gives a right of action. Such an action, as I understand, can be maintained only on the ground that the injury is such as amounts practically to a taking of property, which that shown in this case clearly is not. A railroad laid upon a highway or street of a city, especially where the fee is in the public, is not necessarily a nuisance. Angel on Highways, 2 ed., §§ 242–244. " While the laying of a railroad on a highway without any peculiar or direct injury to the land owner is not a taking of his property, changes in its surface, and erections which destroy or materially obstruct his access to and use of it, and cause him special damage, may be treated as such taking; and this is the substantial result of many well considered authorities." Pierce on Railroads, 241. But detention and danger in crossing, the frightening of horses, and similar inconveniences and discomforts not amounting to a practical obstruction are, however, not a taking of private property; nor are such injuries, when not caused by negligence, actionable. The reason that an action for such injuries at the suit of a private person will not lie is, that they are not peculiar to him alone, but are shared in greater or less degree by the entire community. Probably it is otherwise where the fee of the street is in the adjoining proprietor, the land having been condemned only to the uses of an ordinary highway.

For these reasons I am of the opinion that the judgment of the district court is right, and ought to be affirmed.