# NEWPORT  COUNTY.

---

PHILIP S. TAGGART *et al. vs.* THE NEWPORT STREET RAILWAY COMPANY.

A corporation was chartered by the name of the Newport Horse Railroad Company, the name being afterwards changed to the Newport Street Railway Company.  The charter provided that notice should be given to abutting owners before the location of tracks, that the road should be operated by "steam, horse, or other power," as the municipal governments might direct, and that the corporation should "not incumber any portion of the streets or highways not occupied by said tracks."  The charter contained no mention of electricity, no permission to erect poles or to condemn property, no provision for compensation to abutters.

Notice was given to abutters prior to track laying, and after notice and hearing the city

council of Newport authorized the company to locate "railroad tracks to be used with horse power" in certain streets. Without further notice the city council subsequently authorized the company to use electric motive power, and to erect and maintain poles for conducting wires.

On a bill in equity brought by abutting owners to enjoin the erection and maintenance of poles and wires in the streets:

*Held,* that no further notice to abutters was needed, notwithstanding the change from horse power to electric power conveyed by suspended wires.

*Held,* further, that, assuming steam not to be permissible, the words of the charter, "other power," properly included electricity, and could not be limited to "other like power."

*Held,* further, that the use of electricity was properly allowed by the city council under the charter.

*Held,* further, that the use of poles ancillary to the electric motive power was not forbidden by the prohibition to "incumber any portion of the streets or highways not occupied by said tracks."

*Held,* further, that the erection and maintenance of such poles ancillary to the electric motive power of the street railroad did not impose a new servitude on the highway, and did not require compensation to the abutting owners.

*Held,* further, that the charter, in omitting to provide for such compensation, was not unconstitutional.

BILL IN EQUITY for an injunction.

The acts of the General Assembly constituting the defendant corporation are, so far as they affect the matters involved in the present case, as follows :

"AN ACT TO INCORPORATE THE NEWPORT HORSE RAILROAD COMPANY.

"Passed April 24, 1885.

"*It is enacted by the General Assembly as follows :*

"SECTION 1. Wm. A. Stedman, A. C. Titus, L. D. Davis, T. W. Freeborne, Joseph P. Cotton, John P. Sanborn, Henry D. DeBlois, Charles E. Hammett, T. T. Pitman, Wm. H. Thurston, Thomas Coggeshall, Henry H. Fay, Thomas Gladding, their associates, successors, and assigns, are hereby made a corporation by the name of the 'Newport Horse Railroad Company,' for the purpose of constructing and operating a horse railroad within the city of Newport and towns of Middletown and Portsmouth, with all the powers and privileges, and subject to all the duties and liabilities, set forth in chapters 152 and 158 of the Public Statutes, and in any acts in amendment thereof or in addition thereto, with power to construct, maintain, and use a railway or railways, with convenient single or double tracks and turnouts for cars or carriages, to be used for the transportation of passengers only, upon and over such streets, roads, wharves, and highways of the

city of Newport and towns of Middletown and Portsmouth, except in Thames Street, Kay Street, Ayrault Street, and Bellevue, Rhode Island, and Ocean avenues in Newport, as shall be from time to time fixed and determined by the city council of Newport and by the town councils of the towns of Middletown and Portsmouth respectively, with the assent of said corporation in writing expressed, and filed with the city clerk of said city and town clerks of said towns; and all tracks of said corporation shall be laid at such distance from the sidewalks in the said city as the said city council shall, in their orders fixing the route of said railroad, determine; provided said corporation shall not lay out, construct, use, or continue said horse railroads into, over, or through any street or highway in said city of Newport or towns aforesaid, unless with the assent of the councils of said city and towns, and upon compliance with such terms and conditions, and under such rules and regulations, as said city council and town councils may impose.

" SECT. 2.    Notice to abutters on streets or highways in which it may be proposed to lay the tracks of said corporation shall be given by the publication in one or more newspapers published in said city of Newport, fourteen days at least before the location of any such tracks, and also by posting in three public places in said city and towns aforesaid notice of said proposed location fourteen days at least before the same shall be made.

" SECT. 3.    The said road shall be constructed and maintained in such form and manner, and on such grade, as the city council of said city and town council of said towns may, in their votes fixing and determining the routes thereof as aforesaid, prescribe and direct; and whenever, in the judgment of said corporation, it shall be necessary to alter the grade of any street or highway so occupied by it, such alteration may be made at the expense of said corporation, provided the same shall be assented to by the said city and town councils.

" SECT. 4.    At any time after the expiration of one year from the opening for use of said railroad, or any part thereof, in any street or highway of said city or towns of Middletown or Portsmouth in which the same be located as provided by this act, the city council of said city, or the town councils of said towns, may

by vote determine as to the said track, that the same or part thereof be discontinued, and thereupon the location shall be deemed revoked, and such portion of the tracks and rails of said corporation shall forthwith be taken up and removed by it and at its expense; and if the same are not taken up and removed within thirty days after notice of the passage of such vote by said city council, or by the town council of Middletown or Portsmouth, shall have been served upon said corporation, it shall be done by such officers or persons as said city or town councils may direct; and the said streets shall be repaired by such officers or persons directed to act as aforesaid, and said corporation shall be liable to pay and shall pay the expense thereof so incurred by such persons or officers, and, if not paid when directed, the same may be sued for and recovered in an action of the case in the name of the treasurer of said city of Newport, or in the name of the treasurer of said towns of Middletown or Portsmouth, as the case may be.

" SECT. 5. Said tracks or road shall be operated and used by said corporation with steam, horse, or other power, as the councils of said city and towns may from time to time direct, and said corporation shall have power, from time to time and at all times, to fix such rates of fare as they may deem expedient, not exceeding ten (10) cents for each passenger between any two points on said road.

" SECT. 6. The councils of said city and towns shall have power at all times to make such regulations as to the rate of speed and mode of use of the tracks within the limits of said city and towns respectively as the public convenience and safety may require.

" SECT. 7. Said corporation shall put all streets and highways, and every portion thereof over or through which they shall lay any rails, in condition satisfactory to the highway authorities of said city and towns; and they shall keep and maintain in repair such portions of the streets and highways as shall be occupied by their tracks, and shall be liable for any loss or injury that any person shall sustain by reason of carelessness, neglect, or misconduct of any of its agents and servants in the management, construction, or use of said tracks or streets; and in case any damage shall be recovered against said city or either of said towns by rea-

son of any such misconduct, defect, or want of repairs, said corporation shall be liable to pay to said city or town any sums thus recovered against them, together with all costs and reasonable expenditures incurred by them in the defence of any such suit or suits in which recovery may be had, and said corporation shall not incumber any portion of the streets or highways not occupied by said tracks.

" SECT. 8. Whenever any estate abutting on a street or highway, upon or over which the rails of said corporation shall be laid, shall be injured thereby, the said corporation shall be liable to pay the owner or owners thereof the damages thereby occasioned to said estate.

" SECT. 9. If any person shall wilfully or maliciously obstruct said corporation in the use of said tracks, or the passage of their cars and carriages upon and over the same, such persons, in addition to being liable to said corporation for any damages occurring to it, shall, upon conviction, be imprisoned not exceeding three months, or be fined not exceeding one hundred dollars.

" SECT. 10. If said corporation or its agents or servants shall wilfully or maliciously obstruct any street or highway, or the passing of any carriage over the same, said corporation shall be fined not exceeding one hundred dollars.

" SECT. 11. Nothing in this act shall be construed to prevent the city council of said city or town councils of said towns from entering upon and taking up any of the public streets or highways traversed by said corporation, for any purpose for which they may lawfully take up the same.

" SECT. 12. The capital stock of said corporation shall be fixed in amount from time to time by the company, and not to exceed one hundred thousand dollars, to be divided into shares of one hundred dollars each.

" SECT. 13. The government of said corporation shall be vested in five directors, one of whom shall be president, to be chosen in such manner and at such times and places as the said corporation shall by by-law prescribe.

" SECT. 14. Said corporation shall have power to purchase and hold such estate, real and personal, to an amount not exceeding one hundred thousand dollars, as shall be necessary for the con-

venient management and operation of said road, or for stables, or for any other purpose in any way incidental to the management of said road.

"SECT. 15. The stocks or shares of every stockholder shall be pledged and liable to the corporation for all debts and demands due and owing from such stockholder to the corporation, and whether due or due at a future day, and whether arising from assessments or in any other manner; and said stocks or shares may be sold for the payment of such debts and demands in such manner as the by-laws of the corporation may prescribe; and in case the proceeds of such sale shall be insufficient to discharge said debt or demands, with incidental expenses of the sale, the corporation may have its action against the debtor for the balance due.

"SECT. 16. If said capital stock shall not have been subscribed for, and twenty per cent. upon the same paid in, and this corporation organized, in two years from the passage of this act, or if, the said capital stock being so subscribed and paid, and said corporation being organized as aforesaid, this corporation shall fail to complete said railway within three years after the location of said road shall have been fixed by said city council and town councils as aforesaid, in either of the above mentioned cases this act shall be void and of no effect.

"SECT. 17. Said corporation shall have an office or place of business in the city of Newport.

"SECT. 18. This act shall take effect from and after its passage."

---

"AN ACT IN AMENDMENT OF 'AN ACT TO INCORPORATE THE NEWPORT HORSE RAILROAD COMPANY,' PASSED APRIL 24, 1885.

"Passed June 9, 1886.

"*It is enacted by the General Assembly as follows :*

"SECTION 1. Section 1 of the 'Act to Incorporate the "Newport Horse Railroad Company,"' passed April 24, 1885, is hereby amended so as to read as follows :

"'SECTION 1. Wm. A. Stedman, A. C. Titus, L. D. Davis, T. W. Freeborne, Joseph P. Cotton, John P. Sanborn, Henry DeBlois, Charles E. Hammett, T. T. Pitman, Wm. H. Thurston, Thomas Coggeshall, Henry H. Fay, Thomas Gladding, their asso-

## 674  TAGGART *v.* NEWPORT STREET RAILWAY CO.

ciates, successors, and assigns, are hereby made a corporation by the name of the Newport Horse Railroad Company, for the purpose of constructing and operating a horse railroad within the city of Newport and towns of Middletown and Portsmouth, with all the powers and privileges, and subject to all the duties and liabilities, set forth in chapters 152 and 158 of the Public Statutes, and in any acts in amendment thereof or in addition thereto, with power to construct, maintain, and use a railway or railways, with convenient single or double tracks and turnouts for cars or carriages, to be used for the transportation of passengers only, upon and over such streets, roads, wharves, and highways of the city of Newport and towns of Middletown and Portsmouth, except in Thames Street, Kay Street, Ayrault Street, Buena Vista Street, Beach Street, and Bellevue, Rhode Island, and Ocean avenues, and the avenues and streets to the south of Bath Road and William Street and east of Spring Street and Coggeshall Avenue, in Newport, as shall be from time to time fixed and determined by the city council of Newport and by the town councils of the towns of Middletown and Portsmouth respectively, with the assent of said corporation in writing expressed, and filed with the city clerk of said city and town clerks of said towns ; and all tracks of said corporation shall be laid at such distance from the sidewalks in the said city as the said city council shall, in their orders fixing the route of said railroad, determine ; provided said corporation shall not lay out, construct, use, or continue said horse railroads into, over, or through any street or highway in said city of Newport or towns aforesaid, unless with the assent of the councils of said city and towns, and upon compliance with such terms and conditions and under such rules and regulations as said city council and town councils may impose.'

"SECT. 2.  This act shall take effect from and after its passage."

---

"AN ACT TO REVIVE AND REËNACT 'AN ACT TO INCORPORATE THE "NEWPORT HORSE RAILROAD COMPANY,"' AND THE ACT IN AMENDMENT THEREOF.

"Passed June 1, 1888.

"*It is enacted by the General Assembly as follows :*

"SECTION 1.  The act passed at the January session of the

General Assembly, A. D. 1885, entitled 'An Act to Incorporate the Newport Horse Railroad Company,' and the act in amendment thereof passed at the May session, A. D. 1886, are hereby revived and reënacted, except so far as herein modified.

"SECT. 2.    If the capital stock of said company shall not have been subscribed for and twenty per cent. upon the same paid in on or before June 1, A. D. 1891, or if said corporation shall fail to build at least one mile of said railway within three years after the passage of this act, this act shall become void.

"SECT. 3.    This act shall take effect immediately upon its passage."

_____

" AN ACT IN AMENDMENT OF 'AN ACT TO INCORPORATE THE NEWPORT HORSE RAILROAD COMPANY,' PASSED AT THE JANUARY SESSION, 1885, AND OF THE SEVERAL ACTS IN AMENDMENT THEREOF AND IN ADDITION THERETO.
"Passed May 31, 1889.

"*It is enacted by the General Assembly as follows :*

"SECTION 1.    The name of the 'Newport Horse Railroad Company' is hereby changed to 'Newport Street Railway Company,' and by said last mentioned name said corporation shall have all the rights, powers, and privileges, and shall be subject to all the duties and liabilities, it would have been entitled or subjected to, had its name not been changed as aforesaid.

"SECT. 2.    All acts and parts of acts inconsistent herewith are hereby repealed, and this act shall take effect upon its passage."

_____

The following is the notice which was given under § 2 of the above act of April 24, 1885 :

"NOTICE.

"HEARING ON LOCATION OF NEWPORT HORSE RAILROAD.

"To William J. Underwood, William B. Sherman, Robert S. Franklin, Anthony S. Kimber, Philip S. Taggart, Eliza H. Greene, Frederick N. Barlow, William P. Sheffield, Thomas S. Burdick, John B. DeBlois, Benjamin F. Downing, George E. Vernon, Silas Dickerson, John G. Ladd, Emily Carry, Ellen F. Mason, Charles H. Burdick, Mary A. King, William S. Cranston, George A. Richmond, and all other abutters upon Franklin Street,

Commercial Wharf, Spring Street, Broadway, Touro Street between Spring Street and Park Place, Park Place, Farewell Street between Broadway and Marlborough Street, Marlborough Street between Farewell and the Old Colony Railroad Station, Levin Street, Bath Road, and Coggeshall Avenue, and to all other persons and corporations legally interested in the subject matter of the petition hereinafter referred to.

"The Newport Horse Railroad Company

having presented its petition to the city council of the city of Newport praying for permission to construct, maintain, and use a railway or railways with convenient single or double tracks and turnouts for cars and carriages, to be used for the transportation of passengers only, upon and over the streets above named, and crossing Thames Street and Bellevue Avenue, notice is hereby given that there will be a hearing upon said petition before the Joint Standing Committee on Streets and Highways, at the council chamber in the City Hall, on

"Wednesday, September 5, 1888,

"*At 8 o'clock, P. M.*,

at which time you may be present and be heard in relation thereto.

" By order of Committee on Streets and Highways,

" Edward Newton, *Chairman.*

" Newport, R. I., *August* 25, 1888."

And subsequently the following ordinances were adopted by the city council of the city of Newport :

"An Ordinance granting to the Newport Horse Railroad Company permission to locate railroad tracks to be used with passenger cars in certain streets in the city of Newport.

"Passed, January 24, 1889.

" *It is ordained by the City Council of the city of Newport as follows :*

" Section 1.   An act of the General Assembly, entitled ' An Act to revive and reënact " An Act to Incorporate the Newport Horse Railroad Company " and the act in amendment thereof,' is

hereby permitted to take effect within the limits of the city of Newport; and permission is hereby granted to said railroad company to locate railroad tracks, to be used with horse power and passenger cars only, in the following named streets in said city, viz.: Commencing on the western side of Thames Street at the head of Commercial Wharf, thence across Thames Street with a single track, through Franklin Street with double track to Spring Street; thence northwardly with single track through Spring Street to Broadway; thence, with suitable turnouts, through Broadway to the boundary line between said city and the town of Middletown; also from said Franklin Street, with single track and suitable turnouts, southwardly through Spring Street to Morton Park; also from Broadway, with single track and suitable turnouts, through Marlborough Street westerly to the Old Colony Railroad Station; also from Spring Street with single track through Levin Street, across Bellevue Avenue, and through Bath Road, with single track and suitable turnouts, to the Pavilion at Easton's Beach.

" SECT. 2. The permission granted in the preceding section is granted upon the express provisions and conditions hereinafter named, to wit:

" In locating and constructing said tracks, said company shall conform to the surveys, regulations, and grades of said streets as they now are, or may hereafter be established by law. The gauge of the track shall be four feet eight and a half inches, the rails to be of such size and pattern as the joint standing committee on streets and highways shall approve.

" Said committee shall make and deposit in the city clerk's office an exact pattern of the rail it proposes to use; an accurate survey or plan of its road, showing its proposed location, the distance of the rails from the curbstones on each side of the streets, the crosswalks of the streets and the width of the same, and the entrances from the gutters to the sewers; also a written description of the manner in which it proposes to construct said road, and to lay and secure its rails. And said company shall not be allowed to break ground, or to occupy any of said streets, until after it shall have obtained the written approval of said committee on streets and highways of its pattern of rail, its surveys, plans, and

manner of constructing its road, and of its method of laying and securing its rails.

" SECT. 3.   Said company shall keep and maintain in good order and condition, whenever necessary, at its own cost and expense, those portions of said streets that may be occupied by its rails, so that the same may be safe and convenient to travellers with their teams, carts, and carriages, at all seasons of the year. And if, by reason of laying said rails, it shall become necessary to alter the water-courses, gutters, culverts, or entrances to the culverts, such change or alteration shall be made by said company at its own cost and expense.

" SECT. 4.   All work herein required to be done by said company shall be done under the superintendence and to the satisfaction of the street commissioner, acting under the advice and direction of said committee on streets and highways, and no car shall run on any of said streets until said company shall have obtained a statement in writing from said street commissioner that the terms and conditions herein prescribed have been complied with, which statement shall be filed in the city clerk's office.

" Said company shall remove all obstructions, mend and repair, pave and repave, said streets, as hereinbefore or hereinafter provided, whenever required to do so by the street commissioner, acting under the advice and direction of said standing committee on streets and highways ; and should said company neglect or refuse to do so for a period of ten days after notice that it is so required, then, and in such case, the city council may forbid and prevent the running of any car or cars on said streets until said requirement is fully complied with.

" If said company shall neglect to do any of the work it is required to do, as hereinbefore provided, for the space of ten days after notice that it is required to do the same, said work may be done by the street commissioner, acting under the advice and direction of said committee on streets and highways, and the expense thereof shall be paid by said company.

" SECT. 5.   In all cases where work is required to be done by said company, said city of Newport reserves to itself the right at its option of doing the same, in which event, however, the expense thereof shall be borne and paid by said company.

" In all cases where any work may have been done by the street commissioner, or by the city of Newport, as hereinbefore or hereinafter provided, the expense of which is to be paid by said company, if the company neglect to pay the same for the space of ten days after demand made therefor, the city council may forbid and prevent the running of any car or cars within the limits of said city until the same is paid, and said city shall have a lien upon said railroad within its limits for the payment of all such expenses.

" SECT. 6. Said company shall at all times conform to such rules and regulations as may from time to time be made by the city council as to the use of the streets through which its track runs, as to the rate of speed and mode of use of said track.

" SECT. 7. The said company shall number each of its cars, and put the number thereof on some conspicuous place on the car, and shall have attached to each horse drawing said cars at least one bell.

" SECT. 8. In streets where a double track is laid, the outer rail of each track, when the distance between the curbstones will admit, shall not be less than eight feet distant from the curbstone; and where a single track is laid, the outer rail, if the distance between the curbstones will admit, shall not be less than eight feet from the opposite curbstone, excepting and making proper allowance for the necessary curves at the corners of the streets. The cars used upon said roads shall not be less than six and a half feet, nor more than seven and a half feet, in width.

" SECT. 9. Said railroad company shall at all times hereafter defend, keep harmless, and indemnify the city of Newport of and from all damages, costs, and expenses to which said city may be subjected, or made liable, by any proceedings at law or in equity, or otherwise growing out of the grant of the privileges in this ordinance granted, or out of the exercise and enjoyment of the same by said company.

" SECT. 10. The city council of said city of Newport shall have the right to annul, amend, or alter, either in whole or in part, this ordinance, and the terms and conditions upon which permission is hereby given to said railroad company to lay said rails; and also the right to order the same, or any part of the same, to be

taken up, and the street or streets through which they are laid to be restored to their original grade and condition, and to be put in good and complete order and repair, so that the same may be safe and convenient for travellers, with their teams, carts, and carriages, at all seasons of the year; the same to be done at the expense of said company, under the superintendence and to the satisfaction of the street commissioner, acting under the advice and direction of said committee on streets and highways; and in case the same is not done by the company within the time limited therefor, then the city council may cause the same to be done, and the expense thereof shall be paid by said company, and said city shall have a lien upon the road within its limits, for the payment thereof.  Said city council shall give at least ninety days' notice to said company of any intention to alter, annul, or amend the terms and conditions of the permission hereby granted, or of their intention to require the rails to be taken up; and whenever said terms and conditions shall be altered, amended, or annulled, or said company shall be required to remove its rails, it shall have at least the period of ninety days from the passage of the order, making said alteration or requirement, to comply with the same; provided, however, that the above provision requiring the city council to give said company ninety days' notice of its intention to cause the rails of said company to be removed shall not apply in any case where the city is about to construct sewers, or do any other work upon any of the highways in which such tracks are or may be laid: and the permission granted in this ordinance is granted upon the express provision and conditions that no claim shall at any time be made against the city by said company for any interruption of its business, or expenses caused by relaying its rails when the same shall be required to be taken up by said city, or for any past interruption of business or like expense which has heretofore been incurred.

"SECT. 11.  Said railroad company shall have the right at any time to give notice to said city that it will no longer use and enjoy the grant herein made to them as to all or any portion of the streets herein specified, and shall thereupon, within ninety days from and after such notice, remove its track and fixtures from such streets or portions of streets, and restore the same to their

original condition, and in as good order and repair as they now are, under the superintendence and to the satisfaction of the street commissioner, acting under the advice and direction of the committee on streets and highways.

"SECT. 12. Said railroad company shall in writing accept the permission and privileges hereby granted, and agree to comply with all the provisions and conditions upon which the same are granted, within sixty days after the passage of this ordinance, and shall within said time file the same with the city clerk; otherwise this ordinance shall be null and void. Said railroad company shall not be allowed to break ground within the city limits until after said acceptance and agreement has been filed as aforesaid, and until after the said company shall give satisfactory security to the city of Newport, by bond with sureties or otherwise, containing the condition that in case said company shall voluntarily cease to use its tracks or any of them, or shall abandon the same, or shall cease to use the same for the space of thirty days for any cause within the six years next hereafter, it shall take up all such tracks ceased to be used or abandoned as aforesaid, and within ninety days of such non-continuance to use, or abandonment, shall put the streets thereunder in as good repair as they now are, without expense to said city."

———

"AN ORDINANCE IN AMENDMENT OF AND IN ADDITION TO AN ORDINANCE PASSED BY THE CITY COUNCIL OF THE CITY OF NEWPORT, JANUARY 24, 1889, ENTITLED 'AN ORDINANCE GRANTING TO THE NEWPORT HORSE RAILROAD COMPANY PERMISSION TO LOCATE RAILROAD TRACKS TO BE USED WITH PASSENGER CARS IN CERTAIN STREETS IN THE CITY OF NEWPORT.'

"Passed March 5, 1889.

"*It is ordained by the City Council of the city of Newport as follows:*

"SECTION 1. The first section of 'An Ordinance granting to the Newport Horse Railroad Company permission to locate railroad tracks to be used with passenger cars in certain streets in the city of Newport' is hereby amended so as to read as follows:

"'SECTION 1. An act of the General Assembly, entitled "An Act to revive and reënact an Act to Incorporate the Newport

Horse Railroad Company, and the act in amendment thereof," is hereby permitted to take effect within the limits of the city of Newport; and permission is hereby granted to said railroad company to locate railroad tracks, to be used with an electric system of motive power on its cars, and with passenger cars only, in the following named streets in said city, viz.: Commencing on the western side of Thames Street at the head of Commercial Wharf, thence across Thames with a single track, through Franklin Street with double track to Spring Street; thence northwardly with single track through Spring Street to Broadway; thence, with suitable turnouts, through Broadway to the boundary line between said city and the town of Middletown; also from said Franklin Street, with single track and suitable turnouts, southwardly through Spring Street to Morton Park; also from Broadway, with single track and suitable turnouts, through Marlborough Street westwardly to the Old Colony Railroad Station; also from Spring Street with single track through Levin Street, across Bellevue Avenue, and through Bath Road, with single track and suitable turnouts, to the Pavilion at Easton's Beach.'

"SECT. 2. Said railroad company is hereby authorized to erect and maintain, under the direction of the joint standing committee on streets and highways, a double line of poles, one line on each side of the street, in all of the streets and highways above named (except as hereinafter provided), for the support of its overhead wires used in connection with its electric system of motive power.

"In Levin Street and in Spring Street, between Broadway and Franklin Street, only one such line of poles shall be so erected and maintained.

"SECT. 3. The permission to erect and maintain said poles is hereby given upon the same terms and conditions, so far as applicable, and subject to the same liabilities, as are expressed in the last ten sections of said ordinance relative to the laying, use, and removal of rails in said streets and highways; and the conditions of the bond required to be given by section 12 of said ordinance shall include and apply to said poles in like manner as to the tracks therein referred to.

"SECT. 4. This ordinance shall take effect upon its passage."

When the Newport Street Railway Company proceeded to erect

poles pursuant to the above ordinance, this bill for an injunction was filed by certain owners of property in streets on which the poles were erecting.

*Providence, January* 18, 1890. DURFEE, C. J. This bill is brought by the complainants as abutters on certain streets in the city of Newport, along and over which the tracks or rails of the defendant company's street railway have been laid. The object is to have the company enjoined from erecting or maintaining certain poles and wires in the streets in front of their estates. Said poles were erected to support said wires over said tracks for the conduction of electricity, which is used as a motor for the passenger cars traversing said tracks. The poles are placed along the margins of the sidewalks of said streets about one hundred and twenty feet apart, and were placed so by permission of the city council of the city of Newport, given by ordinance. The case was submitted on bill and answer, no replication having been filed. The bill alleges several grounds of relief. We will consider them severally as alleged.

The *first* ground is, that the company did not give notice as required by section 2 of the act of incorporation. Said section provides for notice to abutters, to be given by publication and posting at least fourteen days before the location of tracks proposed to be laid. The bill alleges that the purpose for which the notice was required was to apprise the abutters " of the nature and extent of the proposed use of the streets and highways," and to afford them an opportunity to appear before the city and town councils having power over the matter, and be heard in relation thereto. The bill admits that a notice was given in August and September, A. D. 1888, but avers that it was defective in that it did not set forth that any other than horse power was intended to be used. The answer states that said notice did not refer to the matter of power, and maintains that any reference to it therein was unnecessary, since section 2 prescribes notice only before action in regard to the location of the tracks. This is so. It is section 5 that relates to the power. That section provides that " said tracks or road shall be operated and used by said corporation with steam, horse, or other power, as the councils of said city and towns may from time to time direct." No notice is required before such direction.

The ordinance in regard to location was passed January 24, A. D. 1889. It permitted the use of horse power only. The ordinance permitting the use of electricity was passed March 5, A. D. 1889. It seems to us that the latter ordinance was clearly authorized by section 5 in the words above quoted. The previous location of the tracks was not affected thereby.

The *second* ground alleged is, that the right to use electricity is not given. The language in regard to the power to be used is that above quoted, namely, that the road shall be operated " with steam, horse, or other power, as the councils of said city and towns may from time to time direct." The complainants contend that the word " steam " must be struck out, because it has been decided that steam cannot be used without compensation to the owners of the fee for the new servitude imposed, and no compensation is provided for, and because, " steam " being struck out, " other power " must be construed to mean other power similar to horse power, *i. e.* other animal power. We do not find the argument convincing. Allowing that " steam " must be struck out for the reason given, it does not follow, in our opinion, that " other power " must be construed to mean other animal power. Horse power is the only animal power which has ever been used for the traction of street railway cars in our northern cities, and it is the only animal power which could have occurred to the General Assembly as fit to be used. The suggestion that " other power " may mean mules cannot be entertained. The act of incorporation was passed in the winter of 1885, when the idea that electricity might be brought into use as a motor was already familiar, and nothing seems more probable than that the words " other power " were inserted with a view to its possible employment. We do not think the second ground valid.

The *third* ground is, that the erection of the poles on the sidewalks is in effect prohibited by the act of incorporation. The seventh section, which relates to the repair of the streets where the tracks are and to damages for negligence on the part of the company, concludes as follows, to wit: " And said corporation shall not incumber any portion of the streets or highways not occupied by said tracks." The poles are certainly in a portion of the streets not occupied by the tracks ; but do they *incumber*

that portion, in the meaning of the word as used? To incumber, according to Webster, is " to impede the motion or action of, as with a burden; to weigh down; to obstruct, embarrass, or perplex." To incumber, as used in said section 7, doubtless means to obstruct or hinder travel by putting things in the way of it. The poles are very slightly in the way of travel, being placed, as hitching posts, lamp posts, electric light poles, telegraph and telephone poles are placed, near the front margins of the sidewalks. We are not inclined to say, however, that they do not incumber because they are placed as they are, but only that it does not follow that they incumber because they are so placed. Take, for instance, a lamp post or an electric light pole. It is slightly in the way, and, if it served no useful purpose in regard to the street, might justly be deemed to incumber it. But it supports a lamp, or an electric light, which illuminates the street at night, and so improves the street for its proper uses. It is not, therefore, an incumbrance in any proper sense of the word. The real question is, as it seems to us, whether the words, " and said corporation shall not incumber any portion of the streets or highways occupied by said tracks," were intended to restrain the city council of the city of Newport from authorizing the use of electricity for a motor in the manner in which it is used by the company. We have already decided that the council has power by section 5 to authorize the use of electricity, so that the question relates only to the manner of using, and is, whether the council has power to authorize the use in said manner. It seems to us that the provision that the tracks or road shall be operated by " steam, horse, or other power, as the councils of said city and towns may from time to time direct," is broad enough to empower said councils not only to authorize the use of electricity as a motor, but also to authorize its use by means of any system of application which it approves as suitable; and it further seems to us that the concluding words of section 7 have their full meaning when applied to the company acting of itself, without extending them to city and town councils acting under section 5, or to the company acting under said section as authorized by such councils. It appears that said concluding words were copied from charters of street railway companies which were only authorized to use horse power, and in

which, of course, they could have had no such application as is here contended for. It also appears from the allegations of the answer that the mode of using electricity which has been adopted is the only mode in which it can be successfully used by the company for the operation of the road. These are things which confirm our views. Our conclusion is, that the power conferred by section 5 is not qualified by the concluding words of section 7, and that the poles complained of, having been erected under section 5 as part of the apparatus for supplying the railway with its motive power, are to be regarded, not as incumbering the streets, but as ministering to their uses, and as increasing the facilities for travel which they afford to the public.

The *fourth* ground alleged is, that if the act of incorporation authorizes the use of electricity for the operation of said street railway, and the erection of the poles as ancillary thereto, it is unconstitutional and void because it authorizes the imposition of an additional servitude upon the streets without providing for any additional compensation to the owners of the fee of said streets. We think it is settled by the greater weight of decision that a railroad constructed in a street or highway, and operated by steam in the usual manner, imposes a new servitude and entitles the owner of the fee to an additional compensation; but that a street railway operated by horse power, as such street railways are ordinarily operated, does not impose any new servitude, and does not entitle the owner of the fee to any additional compensation. Mills on Eminent Domain, § 205 and cases cited; Angell on Highways, § 91 d, n. 1, and cases cited; *Newell* v. *Minneapolis, L. & M. Railway Co.* 35 Minn. 112; also 25 Amer. Law Register, N. S. 431, and cases cited in the note. The distinction is often stated as a distinction between steam and horse railroads, but properly it depends, not on the power that is used, but on the effect that is produced. A steam railroad is held to add a new servitude because, as ordinarily operated, it largely prevents the use of the street in the usual modes. Pierce on Railroads, 234. A steam railroad on a street, operated so as to be compatible with the usual modes of use, has been held not to impose a new servitude. *Newell* v. *Minneapolis, L. & M. Railroad Co., supra; Fulton* v. *Short Route Railway Transfer Co.* 85 Ky. 640. It is not the motor,

but the kind of occupation, whether practically exclusive or not, which is the criterion. *Briggs* v. *Lewiston & Auburn Horse R. R. Co.* 79 Me. 363. A steam railroad, as ordinarily operated, it has been said, dangerously interferes with the usual modes of travel, and is a perpetual embarrassment to them, in greater or less degree, according as its business is greater or less, or as the running of the trains is more or less frequent; whereas the ordinary street railway, instead of adding a new servitude to the street, operates in furtherance of its original uses, and, instead of being an embarrassment, relieves the pressure of local business and local travel. *Grand Rapids & Indiana Railroad Company* v. *Heisel,* 28 Mich. 62. See, also, *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515; *Citizens' Coach Co.* v. *Camden Horse R. R. Co.* 33 N. J. Eq. 267; *Elliott* v. *Fairhaven & Westville R. R. Co.* 32 Conn. 579; *Hobart* v. *Milwaukee City R. R. Co.* 27 Wisc. 194. The only considerable privilege which the horse car has over other vehicles is that, being confined to its tracks, other vehicles are obliged to turn aside for it, but this is an incidental matter, insufficient to make the horse railroad a new servitude. *Shea* v. *Potrero & Bay View R. R. Co.* 44 Cal. 414.

The street railway here complained of is operated by electricity. It does not appear, however, that it occupies the streets or highways any more exclusively than if it were operated by horse power. The answer avers that "electricity, besides being as safe and as easily managed as horse power for the propulsion of street cars, is more quiet, more cleanly, and more convenient than horses, both for residents on the streets used by said cars and for the public generally, and also causes much less wear and injury to the streets and highways than is occasioned by street cars of which horses are the motive power." These averments, the case being heard on bill and answer, must be taken as true. We see no reason to doubt their truth. It is urged that electricity is a dangerous force, and that the court will take judicial notice of its dangerousness. The court will take notice that electricity, developed to some high degree of intensity, is exceedingly dangerous, and even fatally so, to men or animals, when brought in contact with them; but the court has no judicial knowledge that, as used by the defendant company, it is dangerous. The answer denies that

it is dangerous to either life or property. It is also urged that the cars, moving apparently without external force, alarm and frighten horses. This, so far as it is alleged in the bill, is denied in the answer. We see no reason to suppose that this danger is so great that, on account of it, the railway should be regarded as an additional servitude. The answer alleges that many street railways, operated by electricity in the same manner as the defendant's, are in use in different states, and that many more are in process of construction.

Reference has been made to cases which hold that telegraph or telephone poles and wires, erected on streets or highways, constitute an additional servitude, entitling the owners of the fee to additional compensation, and from these cases it is argued that the railway here complained of is an additional servitude by reason of the poles and wires which communicate its motive power. There are cases which hold as stated, and there are cases which hold otherwise. But, assuming that telegraph and telephone poles and wires do add a new servitude, we do not think it follows that the poles and wires erected and used for the service of said street railway likewise add one. Telegraph and telephone poles and wires are not used to facilitate the use of the streets where they are erected for-travel and transportation, or, if so, very indirectly so ; whereas the poles and wires here in question are directly ancillary to the uses of the streets as such, in that they communicate the power by which the street cars are propelled. It has been held, for reasons which we consider irrefragable, that a telegraph erected by a railroad company within its location, for the purposes of its railroad, to increase the safety and efficiency thereof, does not constitute an additional servitude, but is only a legitimate development of the easement originally acquired. *Western Union Telegraph Co.* v. *Rich*, 19 Kans. 517.

Our conclusion is, that the complainants are not entitled to the relief prayed for on the grounds alleged, and that the bill be dismissed with costs.

*Julien T. Davies, Arnold Green & Patrick J. Galvin*, for complainants.

*Francis B. Peckham & Darius Baker*, for respondent.