## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed October 26, 1891.

NORTH BALTIMORE PASSENGER RAILWAY CO., ETC.,

VS.

NORTH AVENUE RAILWAY CO., ETC.

*Bernard Carter* for complainant.

*Steele, Semmes & Carey, Fielder C. Slingluff* and *J. J. Alexander* for respondent.

DENNIS, J.—

This bill is filed by the North Baltimore Passenger Railway Company to restrain the North Avenue Railway Company from using the tracks of the former company on North avenue, between McMechen and Charles streets, or from "straddling" said tracks by laying one of its rails between them. The plaintiff bases its rights to the relief prayed upon the following grounds:

I. It is contended that the defendant company is not a properly organized corporation, in that, First. It is an *elevated* railroad within the meaning of section 186 of article 23 of the Code (the general railroad law), which forbids the incorporation of an elevated railroad either in the city or any of the counties of the State, except under a special charter of the General Assembly, while the defendant is incorporated under the general incorporation law, and second, its charter has failed to state the "names of the places of the *termini* of said road," as required by section 159 of article 23, which requirement is a condition pre-

cedent to its successful incorporation. And hence, as the defendant is not a properly organized corporation; it has no right to lay any tracks whatever or to operate as a railway company.

II. It is further contended that even if the defendant shall be held to be properly incorporated, it still has no right to use the plaintiff's tracks in either of the ways proposed, because its rights to its tracks are vested and constitute property, of which the plaintiff can only be deprived by the exercise of the right of eminent domain, after due compensation first paid or tendered. I will consider these several propositions in the order in which they are above set forth.

I. Is the North Avenue Company an "elevated railroad" within the meaning of the prohibition contained in sec. 186 of art. 23, above referred to? The North Avenue Company was organized by certificate on May 6, 1889, under the provision of the general railroad law now incorporated in the Code, art. 23. Under ordinances duly passed by the Mayor and City Council, it has constructed its road from its terminus at Webb's Hill on the extreme northwesterly limits of the city to McCulloh street on North avenue, and now proposes by virtue of the same authority to continue its line along North avenue as far as Guilford avenue or North street; thence along North street, by an elevated structure, to Lexington street (at which point the road again comes to the surface), and thence on Lexington street to Charles. It is authorized to use the Trolley system of electricity as its motive power. The testimony shows that the entire length of the road when completed will be about six miles, and the elevated structure along North street will be 3,900 feet. It is also shown, by the testimony of the engineer, that it is practically impossible for the road to go down North street, in any other manner than by an elevated structure, owing to the monopoly of that street by the tracks and trains of the Northern Central Railroad, and that the building of this elevated structure will cost the defendant company at least $150,000, more than a road built on the surface of the street would cost, supposing it possible for such a road to be built. Under these circumstances, I am of the opinion that the proposed

erection along North street does not make the defendant an "elevated railroad" within the meaning of the legislative prohibition. To determine its character, its system must be looked at *as a whole*. The law does not say that no portion of a road shall be elevated, for if it so provided, it is manifest that it would be almost impossible ever to build a road, streams must be crossed, and this can only be done by an elevated structure; the security of the public must often be provided for by requiring crossings over public roads and streets to be above grade, and, of course, every such crossing must be by means of an elevated structure. The fact of the great length of this structure cannot alter the principle. It is a *bona fide* attempt to cross the numerous obstructions on North street, in the only manner in which they can be crossed, and is no longer than the engineering necessities of the situation require. It only begins when the obstruction begins and it ends when the obstruction ends. If the fact that this portion of the road runs at an elevation, is to be held to make the whole system "an elevated railroad," then for the same reason the Philadelphia, Wilmington and Baltimore Railroad, which runs into Philadelphia, for a long distance upon an elevated structure—the Union Railroad which in order to cross certain streets above grade, is now building a series of viaducts in this city, and every road which for engineering or other reasons has any portion of its line at an elevation above the surface, must also be held to be an "elevated railroad" within the meaning of the prohibition. A precisely similar case, so far as this question is concerned to the one at bar, was before the Court of Appeals of Kentucky. In that case the Short Route Railroad Company was authorized to build an elevated structure (corresponding in all respects with the structure proposed to be built by the North Avenue Company) along the streets of Louisville, extending over ten squares, to enable it to cross certain streets above grade. The road was not authorized to build an "elevated railroad," and the question directly presented was whether such a structure constituted "an elevated railroad." The Court held that it did not, that the structure was erected in good

faith to meet engineering difficulties, and it did not make the road an elevated railroad within the meaning of the law. Fulton vs. Short Route Company, 85 Ky. 640.

II. Does the charter of the North Avenue Company, in simply saying that the "places of its *termini* are within the city of Baltimore," amount to a compliance with the provision of the Code, which requires that every charter shall contain "the names of the places of the *termini* of such road." This is a difficult question, but I do not think it is necessary to decide it, for even if it is held that the charter is defective in this particular, the defect has been fully cured by legislative sanction. The act of 1890, ch. 217, entitled "an Act to amend the charter of the North Avenue Railway Company of Baltimore City, by authorizing it to lease, purchase or aid other railroads, or to consolidate with the same," amends the charter of the company so that thereafter "the said company shall be authorized and empowered to consolidate with such other roads as it may cross or connect with, and to aid such other roads in the construction or extension of their roads by means of subscriptions to their capital stock, or otherwise, and to lease or purchase such road or roads." Now our Court of Appeals has decided that such an act is a complete recognition of the validity of a charter, for all the purposes named in the certificate of incorporation. Basshor vs. Dressel, 34 Md. 503. This recognition or sanction cannot be narrowed, as contended by counsel for the plaintiff, to relate to and to take effect *only* upon acts already done by the company at the time of the passage of the Act; but as I understand the scope of that decision the Act is a sanction of the entire charter, cures all defects, formal or vital, that may have existed, and hence authorizes the execution by the road of its future purposes as set forth in the certificate. Its legal effect was equivalent to a special act of incorporation, dispensing with any more specific naming of the places of the *termini* than was contained in the certificate and leaving to the Mayor and City Council, under the general power of control and regulation of the streets, the right to define the route of the road and the *specific termini*, all of

which has been done by the ordinance of April 8, 1891.

Assuming then that the defendant is properly incorporated, has it the right

First. To use the tracks of the North Baltimore Company on North avenue for the purpose of running its own cars over them? It certainly would not have such right, except for the provisions of the legislation under which the North Baltimore Company derives its own rights and powers. That company was incorporated by the legislature by act of 1872, ch. 369, and by the express provisions of that act it was only authorized to lay its tracks as permitted by the Mayor and City Council, and subject to all the terms and conditions prescribed by them. The ordinance permitting it to lay its tracks and defining its route being ordinance No. 74 of 1872, authorized it to construct double tracks on North avenue, between John and Charles streets, and then provided as follows: "That if at any time hereafter the Mayor and City Council shall grant to any other road the right to lay railway tracks and run thereon city passenger cars on North avenue next from John street, *they shall then have power to grant to such other road the right to run their cars upon the tracks of the Baltimore Peabody Heights and Waverly Railroad (which is now the North Baltimore Company) on North avenue between Charles and John streets,* under such regulations and upon the payment of such sum or sums of money to the said Peabody Heights and Waverly Railroad (now the North Baltimore Company) as shall be agreed on and fixed by the Mayor, City Commissioner and President of the said Peabody Heights and Waverly Railroad (North Baltimore Company), or a majority of them." In pursuance of the power thus reserved to them, the Mayor and City Council, in the ordinance of April 8th, 1891, defining the rights of the North Avenue Company, provided as follows: "The right to run the cars of the North Avenue Company upon the tracks of the North Baltimore Company on North avenue from McMechen

to Charles street is hereby granted under the terms of Ordinance No. 74, approved June 7th, 1872, but nothing herein contained shall be construed to grant any right or privilege to the said North Avenue Company to lay any additional tracks on North avenue bridge. Thus we see that the right of the North Avenue Company to use the tracks of the North Baltimore Company is given by the Mayor and City Council in pursuance of the power *expressly reserved* to them under the ordinance under which alone the North Baltimore Company derived its own rights. But it is urged by the learned counsel for the plaintiff, first, the Mayor and City Council have no right to authorize the use of electricity on street cars, and second, that the act and ordinance must be construed in the light of circumstances as they then existed; that as at that time electricity was not known as a motive power for street railways, and only animal power was in use, railways propelled by any other than animal power were not within the contemplation of the parties, and hence the reservation must be confined in favor of these so operated. It will be observed that the ordinance containing the reservation makes no restriction upon the *motive power* to be used by the new roads in whose favor the privilege of using the tracks of the North Baltimore Company might be granted, the only requirement is that they shall be city passenger railways. Now it is well settled by repeated adjudications that the use of electricity as a motive power on street railways constitutes no new user of the streets. Taggart vs. Newport Co., 19 Atl. Rep. 326; Halsey vs. Rapid Transit Co., 20 do 859; Williams vs. City Electric Co., 41 Fed. Rep. 556, and cases cited; and when, therefore, a company is authorized to run a street railway, and no restriction is imposed, it would seem to be clear that it has the right to use any power for the propulsion of its cars that may be fit and appropriate to that end. In the case last cited, the Court says, speaking of city passenger railways: "The propelling power of such a road may be

animal, steam, electricity, cable, fireless engines or compressed air, all of which motors have been or are now in use for the purpose of propelling street cars. The legislature having empowered the city to authorize the construction of street railways, without qualification or restriction as to the motive power to be used on such roads, the city has the undoubted right to authorize animal or mechanical power to be used as motors on said roads." These authorities seem to me to settle clearly the right of the city to authorize the use by the defendant of electricity. The contention that as only animal power was in use, at the time the ordinance was passed, the privilege of using plaintiff's tracks must be confined to roads using a similar power, seems to be completely disposed of, by the language of our own Court of Appeals in Peddicord vs. Catonsville Railway Co., 34 Md. 481. The question arose over a grant from a turnpike company to a railway company, authorizing it to run passenger cars on the roadbed. Peddicord claimed that this was a new user not in contemplation of the parties when the turnpike company acquired the roadbed for its purposes. The Court says: "It is true, when the right of way was originally acquired, and when it was granted to the turnpike company it was not actually contemplated by any of the parties to the grant that it would be used for a passenger railway, yet it may be said to have been *within the legal contemplation of all, that it was to be used for all the purposes by which the object of its creation as a public highway could be promoted.* The parties looked to the future, to forever, if the company should last so long, as well as to the then present, and it can not be supposed that the authors of its existence intended otherwise than it should respond to whatever demands, new improvements and increased facilities might make on it so only that such demands must be always consistent with its character and purpose as a public highway." Any other construction would bar the public from

the benefit of all future improvements in modes of transit and confine it forever to a system which is generally conceded to be already antiquated. The only question remaining to be determined is the right of the North Avenue Company to "straddle" the tracks of the North Baltimore Company by laying an inside rail. This right I do not think the North Avenue Company has. It will be observed that the ordinance under which the Mayor and City Council reserved the right to authorize the use by another company of the tracks of the North Baltimore Company contains no reservation of a right to authorize such other company to straddle the tracks; and the limitations upon the franchise of the plaintiff must be confined to the reservation expressly stated, except as thereby modified, its rights under its charter to run its road free from interference cannot be taken away or materially interfered with, except by the exercise of the right of eminent domain, after full compensation first made or tendered. It constitutes *property*, and is to be protected like any other property. A great mass of testimony has been taken as to the extent of the injury to the plaintiff's road by the laying of the proposed inside rail, by reason of its horses slipping thereon, by rendering its repairs more difficult to be made, and by the necessary interruption and delays to the passage of its own cars from the running of them of the other company for so great a distance as from John to Charles streets, using an inside rail as proposed. Without reviewing the testimony in detail, I am of the opinion that on the whole, it has been shown that these several sources of interference and hindrance to its business amounts to a material injury to the plaintiff in the exercise of its franchise and therefore the Mayor and City Council were without authority to grant the defendant the right as claimed. The case of the City of Philadelphia vs. Continental Pass. R. W. Co., 2nd Weekly Notes of Cases, p. 283, seems to be directly in point on this question.