MINNIE L. JAYNES V. OMAHA STREET RAILWAY COMPANY.

FILED FEBRUARY 2, 1898.   No. 5370.

1. Dedication: TITLE TO STREETS. Where land is conveyed and platted into an addition to a city in pursuance of the statute the fee-simple title to the streets and alleys of such addition thereby vests in the public.

2. ——: ——. But the public holds the title to such streets and alleys in trust for the use for which they were dedicated.

3. ———: ———. Such a grant construed, and *held* that it contemplated the right of the public to use the streets for the purpose of passage by such means as it might see fit to employ; but the grant did not contemplate that any person should exclusively and permanently appropriate any portion of a street to his own use to the continued exclusion of the remainder of- the public therefrom.

4. Eminent Domain: ADDITIONAL BURDEN. Whether the use made of a street is an additional burden upon the easement does not depend upon the motive power which moves the vehicles employed in such use, but depends upon whether the vehicle and appliances used in and necessary to effectuate the purpose permanently and exclusively occupy a portion of the street to the continued exclusion of the rest of the public therefrom.

5. ———: ———: ELECTRIC RAILWAYS: DAMAGES. A corporation constructed in a street its railway tracks and set poles, at stated distances apart, on either side of said tracks near the margin of said streets; on these poles it placed wires and used these poles and wires for the moving of its cars on said tracks by electricity. An abutting lot-owner sued the railway company for damages, alleging in his petition that the continued existence' in the street opposite his property of the poles and wires interfered with his ingress to, and egress from, his premises and depreciated them in value. *Held*, That the petition stated a cause of action.

6. ———: ———: ———: ———. What acts, omissions, facts, and circumstances are competent evidence of damages to be considered by a jury are questions of law for the court; but whether such acts, omissions, facts, or circumstances affect an owner's property and damage it, and the amount of such damages, are for the jury. ·

7. ———: ———: ———: ———. It seems that, by reason of article 1, section 21, of our constitution, it is not absolutely essential that the poles and wires of an electric street railway company should be held, as a matter of law, to be an additional burden upon the easement, in order to entitle the abutting lot-owner to compensation for the depreciation to his real estate, caused by the permanent and continued presence in the street in front thereof of such poles and wires.

ERROR from the district court of Douglas county. Tried below before IRVINE, J. *Reversed.*

The opinion contains a statement of the case.

*H. C. Brome* and *Brome, Andrews & Sheean,* for plaintiff in error:

Whenever the location, construction, and use of a public improvement occasion a direct disturbance of a

physical right which the owner enjoys in connection with his property, and the result of such interference is to lessen the market value of the property, then that property is damaged within the meaning of our constitution and the owner entitled to compensation commensurate with the injury sustained. (*Gottschalk v. Chicago, B. & Q. R. Co.*, 14 Neb. 550; *Rigney v. City of Chicago*, 102 Ill. 64; *City of Pekin v. Winkel*, 77 Ill. 56; *City of Pek:n v. Brereton*, 67 Ill. 477; *City of Elgin v. Eaton*, 83 Ill. 535; *City of Shawneetown v. Mason*, 82 Ill. 337; *Stock v. City of East St. Louis*, 85 Ill. 377; *Chamberlain v. West End of London & C. P. R. Co.*, 2 Best & S. [Eng.] 605; *Beckett v. Midland R. Co.*, 3 Common Pleas L. R. [Eng.] 81; *Mollandin v. Union P. R. Co.*, 14 Fed. Rep. 394; *Republican V. R. Co. v. Fellers*, 16 Neb. 169; *Chicago, K. & N. R. Co. v. Hazels*, 26 Neb. 364; *Omaha & N. P. R. Co. v. Janecek,* 30 Neb. 276; *Reardon v. City and County of San Francisco*, 66 Cal. 492; *City of Denver v. Bayer*, 7 Colo. 113; *City of Montgomery v. Maddox*, 89 Ala. 181; *Omaha II. R. Co. v. Cable Tram-Way Co.*, 32 Fed. Rep. 727; *City of East St. Louis v. O'Flynn*, 119 Ill. 200; *City of Denver v. Vernia*, 8 Colo. 399; *Hogan v. Central P. R. Co.*, 71 Cal. 83; *Town of Longmont v. Parker*, 14 Colo. 386; *Gainesville, H. & W. R. Co. v. Hall*, 14 S. W. Rep. [Tex.] 259.)

Use and occupation of a public street or highway by an electric street railway with its poles, wires, and tracks were not contemplated or authorized by the original dedication of the street to the public, and if such use and occupation decrease the market value of adjacent lots by a physical interference with the use and enjoyment of the streets by the owner in connection with his property, then his property is "damaged" within the meaning of that word in our constitution, and he is entitled to compensation. (*Southern P. R. Co. v. Reed*, 41 Cal. 256; *Imlay v. Union B. R. Co.*, 26 Conn. 249; *South Carolina R. Co. v. Steiner*, 44 Ga. 546; *Cox v. Louisville, N. A. & C. R. Co.*, 48 Ind. 178; *Indianapolis, B. & W. R. Co. v. Hartley*, 67 Ill. 439; *Phipps v. Western M. R. Co.*, 66 Md. 319; *Grand*

*Rapids & I. R. Co. v. Heisel,* 47 Mich. 393; *Chamberlain v. Elizabeth Cordage Co.,* 41 N. J. Eq. 43; *Lawrence R. Co. v. Williams,* 35 O. St. 168; *Carl v. Sheboygan & F. DuL. R. Co.,* 46 Wis. 625; *Hastings & G. I. R. Co. v. Ingalls,* 15 Neb. 123; *Burlington & M. R. R. Co. v. Reinhackle,* 15 Neb. 279.)

*John L. Webster, contra:*

The construction or operation of a street railway along the streets cannot be made the foundation of an action for damages by an abutting property owner. (*Taggart v. Newport S. R. Co.,* 19 Atl. Rep. [R. I.] 326, 7 L. R. A. 205; *Williams v. City Electric Street R. Co.,* 41 Fed. Rep. 556; *Halsey v. Rapid Transit S. R. Co.,* 20 Atl. Rep. [N. J.] 859; *Koch v. North Avenue R. Co.,* 15 L. R. A. [Md.] 377; *Texas & P. R. Co. v. Rosedale Street R. Co.,* 64 Tex. 80.)

The construction and operation of a street railway do not cast any additional servitude upon the street, and a railway company is not liable to the abutting property owner for damages arising from the construction and operation of the road. (*Attorney General v. Metropolitan R. Co.,* 125 Mass. 515; *Fulton v. Short Route Railway Transfer Co.,* 85 Ky. 640; *Grand Rapids & I. R. Co. v. Heisel,* 38 Mich. 62; *Briggs v. Lewiston & A. H. R. Co.,* 79 Me. 363; *Hobart v. Milwaukee City R. Co.,* 27 Wis. 194; *Elliott v. Fair Haven & W. R. Co.,* 32 Conn. 579; *Citizens Coach Co. v. Camden Horse R. Co.,* 33 N. J. Eq. 267; *Carson v. Central R. Co.,* 35 Cal. 325; *Newell v. Minneapolis, L. & M. R. Co.,* 35 Minn. 112; *Kellinger v. Forty-second Street & G. S. F. R. Co.,* 50 N. Y. 206; *Finch v. Riverside & A. R. Co.,* 25 Pac. Rep. [Cal.] 765.)

RAGAN, C.

Minnie L. Jaynes brought this suit in the district court of Douglas county against the Omaha Street Railway Company, hereinafter called the railway company, a corporation organized under the laws of the state and owning and operating an electric street railway in the streets of the city of Omaha by permission of the city's authority.

Jaynes in her petition alleged, among other things, that she was the owner of lot 8, in block 15, in R. V. Smith's Addition to the city of Omaha; that said lot was a tract of land 243 feet in length east and west and 66 feet in width north and south; that it was bounded on the east by Sixteenth street and on the south by Clarke street; that the railway company had constructed its railway over and upon and along the surface of said Sixteenth and Clarke streets in front of her property, and was operating its cars thereon, the motive power being electricity; that the railway company, for the purpose of so operating its cars, had erected poles on either side of said streets adjacent to her premises, and placed a wire upon said poles parallel to the railway track, and had strung wires across said streets on said poles; that by reason of such construction and operation of said railway on said tracks adjacent to said premises the value of the latter had been greatly depreciated; that the location of the poles and wires of the railway company in said streets interfered with Jaynes' ingress to and from her property, and thereby depreciated its value. There was a prayer for a judgment for damages. To this petition the railway company filed a general demurrer, based on its contention that the petition did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer and dismissed the petition and Jaynes brings that judgment here for review on error.

1. By sections 104, 105, and 106, article 1, chapter 14, Compiled Statutes 1897, it is made the duty of every original owner or proprietor of any tract of land who shall subdivide the same for the purpose of laying it out in an addition to a city to cause a plat of such subdivision to be made with reference to known or permanent monuments, and in such plat give the dimensions and the courses of all streets and alleys established thereby, and to execute and acknowledge this plat before some officer authorized to take acknowledgments of deeds, and when so executed, to file such plat for record in the office of

the register of deeds of the proper county. The acknowl-
edgment and record of such an instrument are equivalent
to a deed in fee-simple of such portion of the premises
platted as is on such plat set apart for streets and other
public purposes. Assuming that Smith was the original
owner of the lands out of which the lots of Jaynes were
carved, that he complied with the statute just quoted
and thereby dedicated these streets to the public and
thereby conveyed the fee-simple title of these streets to
the city of Omaha, we have the question, for what pur-
pose was this dedication or grant made? The particular
purposes which were in the mind of the owner at the
time he made this dedication or grant are not expressed
therein; and the question therefore is, for what purpose
does the law imply or presume the owner granted these
streets to the public? Is the construction and operation
of such an electric railway as the one here on the surface
of these streets embraced in the purposes for which the
original owner dedicated these streets to the public?
Or, in the language of the law books, is the construction
and operation of this street railway an additional burden
or servitude on the easement granted?

It is said by Booth, in section 83 of his work on Street
Railways, that the courts of last resort of the country to
which the question has been presented have all decided
that the construction and operation of such a street rail-
way as the one in question here was not an additional
servitude to those embraced in the original grant. The
courts referred to by this author are Kentucky, Michigan,
Maryland, New Jersey, Pennsylvania, Rhode Island,
Utah, and the United States circuit court for the district
of Arkansas. We shall briefly examine these cases.

The Kentucky case was decided in 1893 and is the
*Louisville Bagging Mfg. Co. v. Central P. R. Co.*, 95 Ky. 50,
4 Am. Electrical Cases 202. It was an application for
an injunction by the owner of a lot fronting on a street
to enjoin the construction and maintenance of an electric
street railway on two grounds: (1) That it would inter-

fere with the lot owner's accustomed use of the street for backing vehicles up to his warehouse; (2) would be dangerous to those residing or doing business on the street. The *nisi prius* court denied the application for injunction, and its judgment was affirmed by the court of appeals; but the question as to whether the construction and operation of the street railway was an additional burden is not mentioned in the case; nor is the question as to whether the street railway company would be liable to damages for the injury done to the lot owner's property by the construction and operation of the railway either argued or discussed in the opinion; and though the question as to whether electric street railways were additional burdens had prior to that date been presented to several courts of last resort, no case of any court is cited in the opinion.

The case from the United States circuit court for the district of Arkansas is *Williams v. City Electric Street R. Co.*, 41 Fed. Rep. 556. In that case the United States circuit court held that the construction and operation of a street railway on the streets of a city was not an additinal burden simply because of the fact the cars were moved by steam. That was the only point in the case. No such question as the one here was involved in the Arkansas case.

The Utah case referred to is *Ogden City R. Co. v. Ogden City*, 26 Pac. Rep. 288. This case was decided in 1891 and was an application for an injunction by the Ogden City Railway Company against Ogden City and another railway company to enjoin Ogden City from carrying into effect an ordinance granting to this other railway company permission to lay a double-tracked street railway in a certain street of Ogden City; the contention of the Ogden City Railway Company being that in 1883 Ogden City, by ordinance, had granted it permission to lay down a double-tracked street railway in said streets, that it had already constructed a single track with turnouts in that street, and that if the other railway com-

pany was granted permission to construct another double-track railway in the same street, the streets would be so obstructed by the four tracks as to interfere with other modes of travel; and that if the defendant street railway company, in constructing its track, should use poles and wires, the plaintiff street railway's property would be greatly damaged thereby. The injunction was denied. The court said: "The allegations of fact are not sufficient to warrant an injunction on the ground that the construction of the defendant's railway would damage the abutting property by materially interfering with rights appurtenant thereto." We do not think this is an adjudication that the construction and operation of an electric street railway in the streets of a city is not an additional burden; and though that question had prior to that time been before the courts of Rhode Island and New Jersey, the opinions in those cases are not referred to, nor is there an opinion of any other court mentioned.

The earliest case that we have been able to find in which the question under consideration was decided is *Taggart v. Newport Street R. Co.*, 19 Atl. Rep. [R. I.] 326, decided in January, 1890. This was an application for an injunction by abutting property owners to enjoin the street railway company from erecting poles and wires as concomitants of their street railway in front of the complainants' property. It appears that prior to the time the suit was brought the street railway company had been using horses to move their cars and were about to substitute electricity as a motive power. In the opinion the court enumerates the grounds upon which the injunction was asked, as (1) that the street railway company had not given certain notices required by the law of its incorporation; (2) that the use of electricity was illegal, as the statute creating the street railway company authorized it to use as a motive power "steam, horses, or other power as the city councils of said city and towns may from time to time direct;" (3) that the erection of the poles was prohibited by the act incor-

porating the street railway company, as that act provided that the street railway should be used, constructed, and operated so that "such corporation shall not incumber any portion of the streets occupied by such tracks." The court held that the company had given the notice required by statute; that the use of electricity as a motive power was expressed within the law creating the corporation; and that the poles in the street were not an incumbrance within the meaning of the act creating the corporation, taking Webster's definition of the word "incumber." The court denied the injunction and said, in the fifth point of the syllabus: "The change of the power by which a street railway is operated from horse-power to electricity, and the erection of poles necessary for its operation, does not impose an additional burden on the abutting property owners." The court reached this conclusion, that the street railway with its poles and wires was not an additional burden, by finding that the electric street railway company did not occupy the streets any more exclusively than it would if operated by horse-power. There is no question that the law of the case was correctly laid down, if the evidence, or the record on its face, sustains the finding of fact made by the court that the electric street railway no more exclusively occupies the street than an ordinary horse railway.

The Rhode Island case just noticed was quoted as an authority for the proposition that an electric street railway is not an additional burden, by the supreme court of New Jersey in December, 1890, in *Halsey v. Rapid Transit Street R. Co.*, 47 N. J. Eq. 380, 20 Atl. Rep. 859. In this case an abutting lot owner sought to enjoin a street railway company from building its track in a street opposite his premises and from erecting certain iron poles in the center of the street to be used in the operation of its cars. The court denied the injunction and held that the placing of the poles in the middle of the street for the purpose of using electricity for street car propulsion did not impose a new servitude on the land

in the street. But it would seem from a reading of the opinion that the complainant's application for an injunction was denied on the ground of the court's doubt as to whether the complainant's property had been or would be damaged by the erection of these poles in the center of the street opposite his property. The court said: "It is true there is a very small space in the middle of the street over which a wagon approaching the entrance cannot pass, but it may pass on either side. Besides the distance of the pole from the entrance renders it very improbable, as it seems to me, that a wagon, in passing from the street to the entrance, would, if there was no pole there, pass over this space one time in fifty. Certain it is that, even if it be true that the pole diminishes the complainant's means of access to the entrance, the diminution is so insignificant as to lay no ground for relief in equity. A doubt as to whether the complainant's land in the street has been appropriated to a purpose for which the public has no right to use it will, at this stage of the cause, be fatal to his claim to an injunction. * * * 'It is impossible to emphasize too strongly the rule so often enforced in this court, that a preliminary injunction will not be allowed where either the complainant's right, which he seeks to have protected *in limine* by an interlocutory injunction, is in doubt, or where the injury, which may result from the invasion of that right, is not irreparable.' "

The supreme court of Pennsylvania, in January, 1891, in *Lockhart v. Craig Street R. Co.*, 21 Atl. Rep. 26, referred to the Rhode Island case as being directly in point, and, if good law, controlling the case under consideration. The Pennsylvania case was an application for an injunction by abutting property owners to restrain the street railway company from constructing and operating its road in a street in front of the complainant's property. The court denied the injunction and stated the question to be whether the construction of the street railway with its poles and wires amounted to a taking of the property

of the complainant without compensation. The court said: "The placing of the wires over the streets does not appear to be a taking of plaintiff's property. The streets are dedicated to public use, and he has certain special rights as an abutting owner, but I cannot see how a wire run through the air above the streets can be said to be a taking, injury, or destroying his property. But another question arises. in reference to the posts placed in the ground for the support of the wires by means of which the cars are moved.    *    *    *    And it may be now taken as settled that the owner's rights of abutting property are subject to the paramount right of the public, and the rights of the public are not limited to a mere right of way, but extend to all beneficial legitimate street uses, as the public may from time to time require.    *    *    * The case of *Taggart v. Railway Co.*, 19 Atl. Rep. 326, is directly in point, and, if good law, covers the case in hand. My own impression is that the use of poles, wires, and other necessary appliances, such as proposed being used by defendants, is not, in any respect, a greater interference with the ownership of the adjoining property owner on a street than the use of streets for fire-plugs, horse-troughs, etc.    *    *    *    To my mind the power in the Craig Street Railway Company to construct and maintain a railroad in compliance with the terms of the act under which it was incorporated is clear, and that these defendants have shown a legal right to proceed and construct the railway contemplated by them, unless the failure to provide means by which the plaintiffs may have such damages as they may sustain assessed and paid or secured in advance renders the act unconstitutional. Upon this question I am not free from doubt, but the decided inclination of my mind is that the act is not unconstitutional for that reason, because the use of the streets for the purpose of applying motive power in the manner proposed is not such a new use as in cities should be treated as outside the proper use for which streets will be held to have been originally

45

dedicated to the public use. *Taggart v. Railway Co.*, before cited, is exactly in point. ·The case presented by plaintiffs is certainly not so clear from doubt that a chancellor should grant an injunction summarily stopping a great public improvement before final hearing, more particularly if the position taken by plaintiffs is correct, and defendants have no legal right to take possession of the streets, as they are about to do, a common law action will compel them to pay all damages arising to plaintiffs and thereafter equity would probably afford a complete remedy by which the wrong done them could be fully corrected." It seems from this that the supreme court of Pennsylvania did not decide, at least in this case, that an abutting property owner was remediless if the construction of the street railway in front of his property damaged it, but denied the abutting property owner an injunction to restrain the erection of the improvement, leaving the question as to whether he was damaged, and if so, how much, to the law courts.

In *Detroit City Railway v. Mills*, decided in May, 1891, 48 N. W. Rep. [Mich.] 1007, the street railway company was erecting its poles and constructing its track in a street in front of a lot owner's property. The lot owner cut the poles down and threatened to continue to do so as long as they were erected, and thereupon the railway company enjoined the lot owner from interfering with its construction of its railway. The *nisi prius* court made the injunction perpetual. The property owner appealed and the supreme court affirmed the judgment. The question as to whether the proposed erection of the poles and wires and tracks on the street constituted an additional burden upon the easement seems to have been much discussed in the case. In the syllabus the court said: "The use of the street for street railways in such a way as not to interfere with the right of a lot-owner as one of the public to pass and repass thereon, or with the right of ingress or egress to and from his lot, does not impose a new burden and servitude, addi-

tional to what was implied by the dedication, which it is beyond the power of the city to authorize without additional compensation to the abutting lot-owners." The court was composed of five judges. Two of these judges seem to have been of opinion that the street railway involved in the action, as it was proposed to be constructed, was not or would not be an additional burden upon the easement. Two of the judges dissented from that opinion and the third concurred in affirming the judgment of the lower court, but said: "I am not prepared to say that the construction of a street railroad track in a street is of itself no additional burden or servitude upon the street. I think it is, but to what extent depends upon all the facts and circumstances under which it is imposed." The cases heretofore alluded to from Kentucky, New Jersey, and Pennsylvania are referred to in the majority opinion as authorities for the proposition that an electric street railway track with its wires and poles is not an additional burden. But the most that can be said for the Michigan case is that whether such a street railway is or is not an additional burden is a question of fact depending upon whether or not it is so operated and constructed as to interfere with the lot-owner's right of ingress and egress to and from his property and his free use of the street.

The Maryland case referred to by Booth is *Koch v. North A. R. Co.*, 23 Atl. Rep. 463, decided in January, 1892. It was an application by abutting lot owners to enjoin a street railway company from constructing its road in a certain street in front of their property. The application was based upon four grounds: (1) that the defendant was not lawfully incorporated; (2) that it had no right to lay tracks of its own outside of tracks already laid in the street by street railway companies; (3) that the city of Baltimore had no authority to authorize the railway company to use electricity as a motive power; (4) that the road proposed to be built was an elevated road within the meaning of the statute which provided

that no elevated roads should be built in that street. The court overruled each of these contentions and denied the injunction. The cases already alluded to from Rhode Island, New Jersey, Pennsylvania, and the federal district of Arkansas are referred to in the opinion, and it is said of them that "they proceed on the principle that a street is a way set apart for public travel and that the use of electricity for propelling street cars is but a new and improved motive power in no manner inconsistent with the uses and purposes for which streets were opened and dedicated as ways for public travel;" and the court decides that the use of electricity as a motive power for street cars does not impose a new servitude upon the streets so as to entitle the abutting owner to compensation. But the question as to whether poles and wires placed in a street in front of an abutting owner's premises constituted an additional servitude entitling him to compensation was neither presented to nor decided by the court.

In *Limburger v. San Antonio Rapid-Transit Street R. Co.*, 30 So. Rep. 533, the supreme court of Texas held that "the use of a street for an electric railway does not impose an additional burden or servitude to that implied by the dedication." That was an action by an abutting property owner against a street railway company to recover damages which he alleged his property had sustained by the construction of a street railway track between the curb of the street and another railway track in the street. The cases hereinbefore referred to were cited by the supreme court of Texas as authorities for the conclusion reached by it. But it is to be noticed that in the Texas case there is not one word on the subject of poles and wires. It does not appear whether or not this street railway company used any poles and wires for the operation of its road. So far as the opinion discloses the whole complaint of the abutting property owner was the presence in the street in front of his property of the tracks and the cars thereon.

These are all the cases which I have been able to find which hold, if they do, that an electric street railway with its concomitants of poles and wires is not an additional burden, and if the abutting owner's property is damaged by the use of the streets for such poles and wires that he has no remedy for such damages. The leading case is the Rhode Island case, and the conclusion reached there was predicated upon the court's finding that the electric street railway did not occupy any more exclusively any portion of the street than an ordinary horse railway would. If all the other cases follow the Rhode Island case, and if it can be said that these cases are authority for the proposition contended for here, that an electric street railway with its wires and poles is not an additional burden, then it is worth while to observe that the principle upon which the cases rest is the one mentioned by the Rhode Island court, namely, not an exclusive and continued occupation of a part of a street to the exclusion of the rest of the public. That principle is sound. But in the case at bar there is no room for the conclusion that the street railway company by the poles and wires which it has placed in the street does not exclusively occupy a portion of that street to the exclusion of the rest of the public. Looking at the original platting of Jaynes' property and the dedication made by the then owner of the lots of a part of it for a street, we think the true construction of the grant made is this: that the grantor intended that the street should be used for the purpose of enabling the public to pass and repass thereon; that it might pass on foot, on horseback, or in vehicles, and that whether the motive power of the vehicles should be steam, electricity, horse-power, compressed air, or any other power. The grant contemplated the right of the public to temporarily use any part and all of these streets for the purpose of passing over them in any manner that it might choose and by such means as it might see fit to employ. But the grant did not contemplate that any

person or corporation might exclusively and permanently appropriate any part of these streets to its use to the continued exclusion of the rest of the public. In the case at bar the railway company with its poles and wires has exclusively appropriated a portion of these streets to its own use to the exclusion of the rest of the public. If the railway company were moving its cars on the surface of these streets by electric power without so permanently and exclusively occupying any portion of the street, we do not think the mere fact that the motive power used was electricity would take the use out of the purpose contemplated by the original grant. The use made of these streets by the railway company is not one common with that of the public generally; its poles and wires remain and must remain and exclusively occupy particular portions of the street and continuously exclude the public from such portions. Whether a use made of a street is an additional burden upon the easement we do not think depends upon the motive power which moves the vehicle employed. It depends upon the question whether the vehicle and appliances used in and necessary to effectuate that purpose permanently and exclusively occupy all or a portion of the street to the continued exclusion of the rest of the public. If they do not, then it is not an additional burden. If they do, it is.

It has been almost universally held, we think, that an ordinary street railway whose cars were moved by horses was not an additional burden. See, among others, the following authorities: *Attorney General v. Metropolitan R. Co.*, 125 Mass. 515; *Citizens Coach Co. v. Camden Horse R. Co.*, 33 N. J. Eq. 267; *Hobart v. Milwaukee City R. Co.*, 27 Wis. 194; *Texas & P. R. Co. v. Rosedale Street R. Co.*, 64 Tex. 80; *Elliot v. Fair Haven & W. R. Co.*, 32 Conn. 579. These decisions rest upon the principle that the street was originally dedicated to the public for the purposes of travel thereon; that a car is a vehicle, the same as a coach or a wagon, and that the

track of a street railway company is laid upon a level with the surface of the street and in such manner as not to obstruct the street and prevent people from freely passing and repassing thereon.     In other words, the horse-car and its track is not a continued exclusive appropriation of any part of the street to the continued exclusion of the rest of the public from that part of the street.

The city of Shawneetown, Illinois, built a levee in a street of that city for the purpose of protecting it against the overflow waters of the Ohio river.     The levee was some ten feet high, but so constructed that the top thereof could be used as the street had been.     An abutting lot owner sued the city for damages, claiming that his lot had been depreciated in value by the presence in front of it of this levee, as it hindered his free ingress and egress to and from his property, and the supreme court of Illinois, in *City of Shawneetown v. Mason*, 82 Ill. 337, held that the levee was an additional burden and the city liable.

The city authorities of East St. Louis, Illinois, authorized a bridge company which owned a bridge across the Mississippi river at that point to construct an approach to this bridge in a public street.     An abutting lot owner sued the city for damages, claiming that the approach to the bridge interfered with his free ingress and egress to and from his property and depreciated it in value, and the supreme court of Illinois, in *Stack v. City of East St. Louis*, 85 Ill. 377, held that the approach to the bridge was an additional burden and the city liable for damages which its presence caused the abutting lot owner.

The city of New York, prior to May, 1773, caused one of its engineers to survey and lay out into lots certain territory.     Upon the plat the engineer left a space for streets.     The conveyance made of these surveyed lots to the grantors of one Story contained a covenant that the grantee in such deed would "build and erect" at his own expense certain streets, among others the streets on

which Story's property fronted. 'The deed also declared that the streets marked on the survey or plat "shall forever thereafter continue and be for the free and common passage of and as public streets and ways for the inhabitants of the said city and all others passing and returning through or by the same in like manner as the other streets of the same city now are or lawfully ought to be." Story became the owner of one of the lots so surveyed and marked out on said plat. The New York Elevated Railroad Company was about to construct in this street, under proper municipal and legislative authority, a trestle-work fifteen feet high. On this they were intending to lay tracks and on these tracks operate passenger cars. Story sought to enjoin the railroad company from such use of the street until he should be awarded the damages which his property would sustain thereby. The case went to the court of appeals of New York and is reported in *Story v. New York E. R. Co.*, 90 N. Y. 122. It was insisted by counsel for the railroad company that the construction and operation of the railroad as contemplated was within the purpose of the original grant or dedication of the land for the street; but the court of appeals held that the proposed railroad would impose an additional burden upon the easement, and the principle upon which it based its decision is that the trestle-work would amount to a permanent and exclusive occupation of a portion of the street to the continued exclusion of the public from such portion. To the same effect see *Lahr v. Metropolitan E. R. Co.*, 104 N. Y. 288.

It is quite generally held that an ordinary steam railroad in a city street or country highway constitutes an additional burden, and this is because the track of a steam railroad is of such a nature and so constructed that it exclusively and continuously occupies a portion of the street or highway to the continuous exclusion of the rest of the public from such part of said street or highway. See, among others, *Hastings & G. I. R. Co. v.*

*Ingalls*, 15 Neb. 123; *Indiana, B. & W. R. Co. v. Hartley*, 67 Ill. 439, and cases there cited. Railroad cars are as much vehicles for the transportation of passengers enabling the public to pass and repass from one part of the city or country to another as are horse-cars or carriages and buggies; but the rails of an ordinary railroad are laid upon ties, and these rest upon an elevation, and the road-bed is of such a nature and construction that it obstructs the street or highway in which it is placed and debars the rest of the public from the use of that part of the street or highway occupied by its track.

It is also very generally held that telegraph and telephone poles in city streets or rural highways constitute additional burdens entitling the abutting property owner to compensation. See, among others, the following cases so holding: *Board of Trade Telegraph Co. v. Barnett*, 107 Ill. 507; *Chesapeake & P. Telegraph Co. v. Mackenzie*, 21 Atl. Rep. [Md.] 690; *American Telephone & Telegraph Co. v. Smith*, 18 Atl. Rep. [Md.] 910; *Western Union Telegraph Co. v. Williams*, 11 S. E. Rep. [Va.] 106; *Eels v. American Telephone & Telegraph Co.*, 143 N. Y. 133. The principle upon which all these cases rest is the sound one that the highway or street is dedicated to the public for the purpose of enabling the public to pass and repass thereon, and that the erection of the poles in the streets by the telephone or telegraph companies is a permanent and exclusive occupation of the streets by such companies to the continued exclusion of the remainder of the public, and in that sense the poles are a continued obstruction in the streets.

The supreme court of Pennsylvania, in *Pennsylvania R. Co. v. Montgomery County P. R. Co.*, 167 Pa. 62, held that an electric street railway, such as the one involved in this case, built in a public highway outside of the city was an additional burden entitling the adjacent land owner to damages. We think that the poles and wires of the electric railway company are an additional servitude or constitute an additional burden upon the streets

in which they are placed, and that the abutting lot
owners of such streets are entitled to whatever damages
their property has sustained by reason thereof.

2. Thus far we have considered this case with refer-
ence to the question as to whether the original dedica-
tion made of the street contemplated that the city might
use or authorize the use of the streets for the purpose
of placing poles and wires therein in connection with the
operation of a railway. But our constitution, article 1,
section 21, provides that the property of no person shall
be taken or damaged for public use without just compen-
sation. The writer is of opinion that if it be assumed
that the original owner of this street in dedicating it to
the public contemplated that it might be used for the
erection of poles and wires therein in connection with
the operation of a passenger street railway, nevertheless
if the city, in applying the street to that use, or authoriz-
ing it to be so applied, damages the property of the ad-
jacent owner, he is by virtue of the constitution entitled
to damages. This court, with nearly all other courts in
which the state constitution is like ours, has held that
an abutting lot owner is entitled to compensation if his
lot is depreciated in value by reason of the changing of
the grade of the street in front of it. Now, when the
land owner plats it into an addition to a city, leaves a
space for a street, he not only dedicates that space to the
public for the purpose of a street, but he knows, or must
know, that the municipality may work such street, keep
it in repair, pave it, grade it, curb it, and may change the
grade. And where the courts have awarded damages to
abutting lot owners because of a change in the grade of
a street, it has not been upon the principle that such a
change of grade was not contemplated at the time the
grant was made; but it has been because of the consti-
tutional inhibition that the public for its use shall not
damage the citizen's property without compensation.
Such is the *City of Elgin v. Eaton*, 83 Ill. 535. Most of the
old constitutions contained a provision that private prop-

erty should not be taken for public use without just compensation, and it was quite generally held by the courts that this provision of the constitution did not entitle an abutting lot owner to compensation for damages which his property had sustained by reason of a change of grade in the street. These cases rest upon the principle that a change of grade of a street was within the purview of the original grant of the land for the street. Suppose that A, owning a block in a city, shall deed one-half of it to that city for any public purpose. By such a grant the city may devote that to any city purpose it may choose, and A could not be heard to say that the purpose to which the city had devoted the grant was not within it; but nevertheless, if the city, in the use it makes of the granted property, shall injure the remainder of A's property, it would be liable for the damages, because in accepting the grant it did so subject to the constitutional provision, and though it might devote it to any public purpose it chose, yet if in so doing it damages A's property, or any other citizen's property, it must make good such damages. It seems to me, therefore, that in order to enable the plaintiff in error in this case to recover damages from the street railway company, it is not absolutely essential that the poles and wires of the street railway company should be held, as a matter of law, to be an additional burden upon the easement.

3. The petition in this case alleges that the permanent existence in the street opposite this property of the poles and wires of the railway company interferes with the plaintiff's ingress and egress to and from her property and have depreciated its value. Are these facts evidence competent to go to the jury for the determination of the question as to whether the plaintiff's property has been damaged within the meaning of the constitution just quoted?

In *Gottschalk v. Chicago, B. & Q. R. Co.*, 14 Neb. 550, the railroad company constructed its tracks in an alley with

the consent of the city authorities. The owner of the abutting lot sued the company for damages. The court, in speaking of the constitutional provision in reference to damage to property for public use, said: "The constitutional provision, therefore, is that private property shall not be taken or injuriously affected without just compensation therefor. The evident object of the amendment was to afford relief in certain cases where, under our former constitution, none could be given. It was to grant relief in cases where there was no direct injury to the real estate itself, but some physical disturbance of a right which the owner possesses in connection with his estate, by reason of which he sustains special injury in respect to such property in excess of that sustained by the public at large. To this extent the property owner is entitled to recover. It is not necessary to entitle a party to recover, that there should be a direct physical injury to his property if he has sustained damages in respect to the property itself whereby its value has been permanently impaired and diminished."

In *City of Omaha v. Kramer*, 25 Neb. 489, it is said: "The words 'or damaged' in section 21, article 1, of the constitution, include all damages arising from the exercise of the right of eminent domain which cause a diminution in the value of private property."

In *Chicago, K. & N. R. Co. v. Hazels*, 26 Neb. 364, the railway company took no part of Hazels' property and no part of the street in front of his lot was occupied by the railway company's track, and yet the court held that if Hazels' property was damaged because of the location of the tracks he was entitled to recover.

In *Omaha & N. P. R. Co. v. Janecek*, 30 Neb. 276, Janecek sued the railroad company for damages which he alleged he had sustained by reason of the depreciation in value of his real estate as the result of the construction and operation of the railroad in front of his premises. Janecek owned block 16, and also a small tract of land

lying immediately south thereof.   His residence was on
the west end of this small tract of land.   West of block 16
and the small tract of land was Atlantic street, and west
of this was block 15.   The railroad company constructed
its road through this latter block.   No part of the rail-
road was on any part of Janecek's property, nor was any
part of the railroad's property in the street on which his,
Janecek's, property abutted.   The court, speaking
through NORVAL, J., said: "The plaintiff's right to re-
cover is based upon section 21, article 1, constitution of
this state, which provides that 'The property of no per-
son shall be taken or damaged for public use without
just compensation therefor.'   It has become the settled
law of this state that under this provision of our consti-
tution it is not necessary that any part of an individual's
property should be actually taken for public use in order
to entitle him to compensation.   If the property has
been depreciated in value by reason of the public im-
provement, which the owner has specially sustained, and
which is not common to the public at large, a recovery
may be had."   To the same effect is *City of Pekin v.
Winkel*, 77 Ill. 56; *Stack v. City of East St. Louis*, 85 Ill.
377; *Rigney v. City of Chicago*, 102 Ill. 64.   In this last
case Rigney recovered damages from the city of Chicago
because it had permitted the construction of a viaduct
over the intersection of Kinzie and Halsted streets 220
feet west of Rigney's property.   Rigney claimed that
the construction of this viaduct cut off his communica-
tion with Halsted street, except by means of a pair of
stairs at the intersection, and that because of this im-
pairment of communication his real estate had been
damaged.   The supreme court said:  " 'Property' in its
appropriate sense means that dominion or indefinite right
of user and disposition which one may lawfully exercise
over particular things or objects, and generally to the
exclusion of all others, and doubtless this is substan-
tially the sense in which the word is used in the consti-
tution, as to the taking or damaging of private property

for the public use.  But the word is often used to in-
dicate the subject of the property or the thing owned.
*   *   *   The restriction of the remedy of the owners of
private property to cases of actual physical injury to the
property was under the constitution of 1848, which sim-
ply provided that private property should not 'be taken
or applied to public use' without just compensation, etc.
The constitution of 1870, however, provides that 'private
property shall not be taken or damaged for public use
without just compensation,' thus affording redress in
cases not provided for by the constitution of 1848, and
embracing every case where there is a direct physical
obstruction or injury to the right of user or enjoyment of
private property, by which the owner sustains some
special pecuniary damage in excess of that sustained by
the public generally which by the common law would, in
the absence of any constitutional or statutory provision,
give a right of action."

Applying the principles enunciated in the foregoing
cases to the facts of the case at bar, we are of opinion
that if Jaynes' property is depreciated in value by rea-
son of the exclusive use of a part of the streets in front
thereof by the railway company's poles and wires and
the continued presence in such streets of said poles and
wires, she is entitled to compensation for such damages.
As an abutting property owner she has the right to free
ingress and egress to and from this property and to and
from the street, a right to an unobstructed view of the
property from the street and an unobstructed view of the
street from the property, and if poles and wires of the
railway company in the street in front of this property
permanently and continuously infringe these rights, and
she is damaged thereby, she is entitled to compensation
therefor.  If a railway company, without responsibility
to the abutting lot owner, may build and maintain in the
street one track, it may construct and maintain any
number.  If it may with impunity place and maintain in
the street in front of the lot owner's property poles fifty

feet apart, it may place them five feet apart, or closer, until the premises, with poles and wires in front, will resemble the pictures one sees of the staked corral of the South African Zulu. Such a staking in of premises would, of course, impair their value; and yet the difference in the case supposed and the one under consideration is one of degree only. This difference does not affect the owner's right of action, but goes only to the *quantum* of his damages. What acts, omissions, facts, or circumstances are competent evidence of damages to be considered by a jury are questions of law for the court; but whether such acts, omissions, facts, and circumstances affect an owner's property and damage it and the amount of such damages are for the jury.

The judgment of the district court is reversed and the cause remanded with instructions to overrule the demurrer of the street railway company and permit it to answer.

REVERSED AND REMANDED.

IRVINE, C., not sitting.

RYAN, C.

I desire to place my concurrence in the result in this case on grounds rather more limited than those above given. In this case a general demurrer was sustained to the petition, upon which, the plaintiff having elected to stand, there was a judgment for the defendant. The demurrer, for present purposes, must be assumed to have admitted such facts as were well pleaded, and it therefore is necessary that the averments of the petition should be stated with more than ordinary fulness. The defendant was described as a corporation engaged in the maintenance, construction, and operation of street railways in the city of Omaha, and was described as the successor of another street railway company in rights and liabilities with respect to the street railway along plaintiff's premises, hereinafter more particularly de-

scribed. The condition of the streets affected and their appropriation and use by the predecessor of the defendant, as well as by the defendant itself, were described in the petition in this language: "That said lot (owned by plaintiff) is a strip of ground 240 feet in length east and west and 60 feet in width north and south, bounded on the east by Sixteenth street, on the south by Clarke street, in the city of Omaha; said Sixteenth street east of said premises and Clarke street south of said premises, at the time of the happening of the grievances hereinafter complained of, were, and for a long time prior thereto had been, public streets of said city of Omaha, but not occupied, used, or obstructed by steam, electric, or horse railways in any manner whatever; that on or about the first day of September, 1889, a corporation known as the Omaha Motor Railway Company constructed a line of street railway over and upon Clarke street, immediately south of said premises, and over and upon Sixteenth street, immediately east of said premises, and commenced the operation of said line of railway over and upon said streets adjacent to said premises, the motive power used upon said street railway at the time of the construction thereof being electricity, poles for the purpose of supporting overhead wires being set in the ground along said streets and adjacent to said premises and overhead wires being attached thereto along said streets adjoining said premises. Plaintiff further says that ever since the construction of said street railway the same has been operated as an electric street railway, cars and motors passing over the line of said railway immediately adjacent to said premises and over Clarke street immediately south of said premises and Sixteenth street immediately east of said premises at intervals of about five minutes. Plaintiff further says that by reason of the location, construction, and operation of said line of street railway over and upon Clarke street immediately south of said premises and over and upon Sixteenth street immediately east of said premises and adjacent

thereto, said premises have been greatly depreciated, the location of the tracks, poles, and wires of said street railway upon said Clarke and Sixteenth streets, as hereinafter described, greatly interfering with the egress from, and ingress to, said premises from said streets and obstructing the view from said premises looking toward said streets, the passage of trains over said street railway upon said streets in front of and adjacent to said premises also greatly interfering with the ingress to and egress from said premises, rendering the same difficult and dangerous, and the noise and vibration incident to the use of said tracks by said defendant company greatly interfering with the comfort and convenience of persons occupying said premises, said premises having been lessened and depreciated in value, on account of the construction and operation of said street railway, in the sum of $20,000."

The facts upon which the plaintiff predicates his right of recovery are the taking possession of, and the using for, a street railway operated by electricity of two streets adjacent to his property. The first class of the elements of damages claimed refers to the effect of locating the tracks, poles, and wires as obstructions to ingress and egress and of the view from the premises of plaintiff looking toward the street. The other elements are the passage of trains over the track, interfering with, and rendering dangerous, egress from and ingress to plaintiff's premises, and the noise and vibration incident to the use of the tracks which interfere with the comfort and convenience of persons occupying said premises. In respect to the last two, it may be said that it is now the settled doctrine in this country that an ordinary street railway upon which cars are moved by horse-power is not an additional burden. (*Citizens Coach Co. v. Camden Horse R. Co.*, 33 N. J. Eq. 267; *Hobart v. Milwaukee City R. Co.*, 27 Wis. 194; *Carson v. Central R. Co.*, 35 Cal. 325; *Texas & P. R. Co. v. Rosedale Street R. Co.*, 64 Tex. 80; *Elliott v. Fairhaven & W. R. Co.*, 32 Conn. 579; *Chicago, B.*

& Q. R. Co. v. West Chicago S. R. Co., 40 N. E. Rep. [Ill.] 1008; Merrick v. Intramontaine R. Co., 24 S. E. Rep. [N. Car.] 667.)   For the occupation and use of the street for ordinary street railway purposes it must, I think, be conceded that the defendant was not liable to plaintiff in damages upon the authority of these cases, hence I omit the allegations as to the occupation and use of the street by a track, for it is common to all street railways, whether operated by horse-power or electricity.

I shall now consider the respects in which the petition charges that the defendant's use of the street differed from that of an ordinary street railway operated by horse-power and in what respects this different use has caused damage to be suffered by the plaintiff.   These factors we have already grouped under the first class of elements of damages, and they are the locating of poles and wires which obstruct ingress and egress and interfere with view from plaintiff's premises across the street. The manner in which real property may be injuriously affected without being physically disturbed or entered upon is well illustrated by the following adjudicated cases: The city of Shawneetown, Illinois, built a levee in a street of that city for the purpose of protecting it against the overflow waters of the Ohio river.   The levee was about ten feet high, but was so constructed that its upper surface could be used as the street had been before the construction of said levee.   An abutting lot owner sued the city for damages, claiming that his lot had been depreciated in value by the presence in front of it of this levee, for the reason that it hindered his free ingress and egress to and from his property, and the supreme court of Illinois held the city liable. (City of Shawneetown v. Mason, 82 Ill. 337.)   The construction of the approaches to a bridge in such a manner as to obstruct the ingress and egress of an owner to and from his property was held to be such an injury as entitled such owner to maintain an action for damages. (Stack v. City of East St. Louis, 85 Ill. 377.)   In Merrick v. Intramontaine R. Co., supra, it

was said by Faircloth, C. J., delivering the opinion of the supreme court of North Carolina: "If the street railway should be so constructed—for instance, if it should shut out or shut off the abutter with embankments, and thus materially impair his rights—this would seem to be an additional burden and subject the company to damages." These adjudicated cases serve to illustrate the fact that in plaintiff's petition the averments that the location of the poles and wires of the street railway upon Clarke and Sixteenth streets in such a way as to interfere with plaintiff's ingress and egress and his view from his premises towards said streets, in connection with the allegation that thereby his real property had suffered depreciation in value, sufficiently stated a cause of action in view of section 21, article 1, of the constitution of this state, which is as follows: "The property of no person shall be taken or damaged for public use without just compensation therefor." As further illustrating the applicability and purpose of this constitutional provision, see also *Gottschalk v. Chicago, B. & Q. R. Co.*, 14 Neb. 550; *City of Omaha v. Kramer*, 25 Neb. 489; *Chicago, K. & N. R. Co. v. Hazels*, 26 Neb. 364; and *Omaha & N. P. R. Co. v. Janecek*, 30 Neb. 276. I have considered this case as it was presented by the averments of the petition which the demurrer admitted to be true, and, tested by the requirements of liberal construction laid down in *Roberts v. Samson*, 50 Neb. 745, there was stated a cause of action. If there exist facts which should serve to change or modify our views, these facts, I think, should be pleaded by the defendant, for we cannot assume their existence. For the reasons above stated I concur in the conclusion. The judgment of the district court should be reversed.