## HOOKER v. FARMERS' IRR. DIST.

### (Circuit Court of Appeals, Eighth Circuit. March 28, 1921.)

### No. 5568.

1. **Waters and water courses ☞263—Cause of flooding of land on irrigation canal held question for jury.**

   Evidence that the flooding of a part of plaintiff's farm, which rendered it unfit for cultivation during a number of seasons, was caused by seepage from an irrigation canal maintained by defendant, *held* sufficient to require submission of the question to the jury.

2. **Waters and water courses ☞260—Owner liable for injury caused by negligent operation of irrigation canal.**

   The owner of an irrigation canal is liable for injury caused to the lands of another through its negligent failure to so maintain, operate, and use its canal as to prevent such injury.

3. **Eminent domain ☞112—Operator of irrigation canal under state authority liable for incidental damage to private property.**

   Under Const. Neb. art. 1, § 21, providing that private property shall not be taken or damaged for public use .without just compensation, the owner of an irrigation canal, though constructed under authority from the state for a public service, and maintained and operated in a lawful and careful manner, is liable for damage caused to the land of another as a necessary effect of such operation.

4. **Limitation of actions ☞55(7)—Limitation does not run against action for damage to land until injury appears.**

   Limitation does not begin to run against an action for damage to land, caused by seepage from a canal which does not run through such land, until the land is visibly affected to its injury.

5. **Waters and water courses ☞260—Irrigation district liable for injury to private property.**

   An irrigation district organized under authority of a state statute, in constructing and operating an irrigation system for its own private benefit, is not exercising a governmental function, and is not exempt from liability for injury to private property.

In Error to the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Action at law by Thomas Hooker against the Farmers' Irrigation District. Judgment for defendant, and plaintiff brings error. Reversed.

T. M. Morrow, of Scottsbluff, Neb. (William Morrow, of Scottsbluff, Neb., on the brief), for plaintiff in error.

F. E. Edgerton, of Aurora, Neb. (L. L. Raymond, of Scottsbluff, Neb., and Hainer, Craft & Edgerton, of Aurora, Neb., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is an action by Thomas Hooker, the owner of 120 acres of land in Nine-Mile draw in the Farmers' Irrigation District in Scottsbluff county, Neb., against the Farmers' Irrigation District, a corporation of the state of Nebraska, to recover

---

damages to his land to the amount of many thousand dollars, which he alleged the corporation had inflicted upon him by permitting and causing water it was taking through its canal to seep therefrom and render 70 acres of his land so wet during the years 1914, 1915, 1916, and 1917, that it was unfit for cultivation. The Irrigation Company admitted by its answer that, since January, 1913, it had been the owner of, and had maintained and operated, the irrigation canal by means of which it diverted water from the North Platte river and conducted it to lands within its district, that its canal is constructed near the plaintiff's land and is higher than that land, that about 36 acres of this land was wet, swampy, boggy, and partly covered with water in 1915 and 1916, and about 56 acres in 1917, and that the value of plaintiff's premises was diminished by virtue of its becoming so wet and partly covered with water. It admitted that this canal was and is a permanent structure and will be used permanently for irrigation purposes. It alleged that the 70 acres of land, which the plaintiff claimed were injured, were flat lands lying considerably lower than the bottom of the canal, that they constituted a part of a natural drainage basin into which all surface waters in that vicinity naturally drained, and that the entire area in that vicinity is so underlaid that the extent to which the condition of the plaintiff's land is due to seepage is a condition over which the defendant could have no control, and that that condition was not due to its negligence. It alleged that its canal was constructed in 1906 and operated by the Tri-State Canal Company until January, 1913, that the plaintiff's lands had been injured by percolating water that appeared on their surface for more than four years prior to the commencement of this suit in October, 1916, and that any injuries sustained by the plaintiff from seepage from its canal are the ordinary and natural results to lands situated as are the plaintiff's from the proper and careful construction and operation of such a canal, for which the defendant is not answerable. By its reply the plaintiff denied the averments of new matter in the answer, and the case went to trial before a jury. When the plaintiff had introduced his evidence and rested, the defendant moved the court to direct a verdict for it, that motion was granted, the case was dismissed, and the plaintiff assigns this ruling as error.

[1] We look to the testimony to see if there was any substantial evidence at this trial which would have sustained a verdict of the jury that the plaintiff's land had been injured by seepage from the defendant's canal. There was plenary proof of the loss by the plaintiff of his crops in 1915, 1916, and 1917, and of damage to his crop in 1914, caused by the water which gathered on the 70-acre tract, which, in the preceding years had been free from surplus water and had borne crops. The answer admitted that this water diminished the value of the plaintiff's premises, and there was substantial evidence of these facts:

The defendant's canal lies in a loop around the northwesterly, northerly, and northeasterly sides of the land of the plaintiff about 40 rods distant from it at its nearest point. The bottom of the canal is about 23 feet higher than the plaintiff's land, and the land between the canal and the plaintiff's land lies on a declivity. The canal, as it extends

around the plaintiff's land is constructed in some places through brule clay and in other places through sand and gravel. It had been operated four or five years before the defendant became its owner in January, 1913, and during those years the plaintiff's land and crops had not been injured by excessive water. The second year, 1914, after the defendant purchased the canal, so much water gathered in and on the plaintiff's land that he could not harvest and shock what corn he had until late in the season. During the year 1914 there was a break in the canal, and for a time the main head of water was shut out. Four witnesses testified that during this time they walked through and examined the bottom and sides of this canal, that they found large crevices in the brule clay through which it passed west and north of the plaintiff's land, and a hole where it looked as though the water had been running out and carrying drift and trash into the crevices. One of these witnesses testified that they dug into this hole 3 feet and found trash, but did not reach solid ground, and that at another place they found seamy brule clay and coarse gravel extending across the bottom of the ditch in successive layers, that this condition of the canal extended more than 300 feet in length, that the stream of water then flowing in the canal was 15 feet wide and 5 or 6 inches deep, and that one-half to two-thirds of it disappeared while it was passing over this 300 feet of brule clay and gravel.

There was conclusive evidence that the deleterious seepage into and upon the plaintiff's land commenced in 1914, and thereafter continued through the years 1915, 1916, and 1917, so that in those years many acres of the land were covered with a lake, which gradually increased in size and depth until it covered nearly 70 acres. There also was testimony that some miles north of the defendant's canal there was another canal nearly parallel thereto, called the Low Line Canal, and several miles north of that canal was another, called the High Line Canal, and that seepage from one or both of these developed for the first time north of the defendant's canal in 1916, and that by the end of July a lake some distance north of the defendant's canal was formed which was subsequently drained. But there was no substantial evidence tending to show that any of the water which injured the plaintiff's land in 1914 and 1915 came from seepage from any canal north of the defendant's. There is some other evidence in this case, but none material to the determination of the question in hand. And the evidence which has been recited has produced an abiding conviction that it was ample to sustain a finding and verdict of the jury that substantial injury was caused to the plaintiff and to his land by the seepage from the defendant's canal in the years 1914, 1915, 1916 and 1917.

Counsel for the defendants cite the rule that, where the evidence is such that the jury can only speculate or guess what the source of the water which caused the plaintiff's damage was, the court should withdraw the case from the jury; but the evidence in this case goes further, and when considered in the light of natural laws, and of the known relation of cause and effect, leaves little doubt that the seepage from the defendant's canal inflicted practically all the damage he sustained from excessive water on his land in the years 1914 and 1915,

and a substantial part of the damage he suffered from it in the years 1916 and 1917.

[2, 3] If the plaintiff sustained damage, as in our opinion there is substantial evidence here tending to prove, by the temporary negligence of the defendant to so maintain, operate, and use its canal as not to injure plaintiff's property, it is liable on account of its negligence to pay that damage. Hopkins v. Clemson Agricultural College, 221 U. S. 636, 646, 647, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Dryden v. Peru Bottom Drainage District, 99 Neb. 837, 158 N. W. 54. If, on the other hand, the defendant has inflicted damage upon the property of the plaintiff that is the necessary effect of its permanent maintenance and operation of this canal in a lawful and careful manner, which the state has authorized it to do for the public use, it is liable to pay this damage to the plaintiff because the infliction of such damage without compensation is a violation of the constitutional prohibition against the taking or damaging of private property for public use without just compensation therefor. Constitution of Nebraska, § 21, art. 1; Omaha & N. P. Ry. Co. v. John Janecek, 30 Neb. 276, 278, 46 N. W. 478, 27 Am. St. Rep. 399; Pumpelly v. Green Bay Co., 80 U. S. 166, 167, 177, 179, 181, 20 L. Ed. 557; United States v. Lynah, 188 U. S. 445, 469, 471, 23 Sup. Ct. 349, 47 L. Ed. 539; Bramlette v. Louisville & N. R. R. Co., 113 Ky. 300, 68 S. W. 145, 146; Jaynes v. Omaha Street Railway Co., 53 Neb. 631, 641, 649, 650, 74 N. W. 67, 39 L. R. A. 751; Middlekamp v. Bessemer Irrigating Ditch Co., 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795.

[4] Nor did the cause of action for damages of the latter nature arise, or the statute of limitations against it commence to run in this case, where the canal did not pass through or over the plaintiff's land, until that land was visibly affected by the seepage which caused the injury for which the action was brought. Middlekamp v. Bessemer Irrigation Ditch Co., 46 Colo. 102, 103 Pac. 280, 283, 23 L. R. A. (N. S.) 795, and cases there cited.

[5] Nor is the defendant exempt from liability for any of these damages on the ground that its maintenance and operation of this canal is a governmental, as distinguished from a proprietary or business, function of this corporation. In maintaining and operating this canal it was not and is not exercising the function of the state of Nebraska in governing the people of that state or any political subdivision thereof. It is exercising its proprietary or public powers for the private benefit of itself and its members. Ill. Trust & Savings Bank v. City of Arkansas City (8th C. C. A.) 76 Fed. 274, 282, 22 C. C. A. 171, 34 L. R. A. 518; Burke v. City of South Omaha, 79 Neb. 793, 795, 798, 113 N. W. 241; Boehmer v. Big Rock Creek Irr. Dist., 117 Cal. 56, 48 Pac. 908, 911; Hewitt et al. v. San Jacinto & P. V. Irr. Dist., 124 Cal. 186, 56 Pac. 894; North Sterling Irr. Dist. v. Dickman, 59 Colo. 169, 149 Pac. 97, Ann. Cas. 1916D, 973.

Let the judgment below be reversed, and let this case be remanded to the court below, with directions to grant a new trial.